# DELAWARE, LACKAWANNA AND WESTERN RAIL-ROAD COMPANY *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 208.   Argued April 10, 1905.—Decided May 15, 1905.

A tax on the value of the capital stock of a corporation is a tax on the property in which that capital is invested, and therefore no tax can be levied upon the corporation issuing the stock which includes property that is otherwise exempt.

The same rule that requires the exclusion from the assessment of valuation of capital stock of tangible personal property permanently situated out of the State applies to property sent out of the State to be sold and which is actually out of the State when the assessment is made.

As a State cannot directly tax tangible property permanently outside the State and having no *situs* within the State, it cannot attain the same end by taxing the enhanced value of the capital stock of a corporation which arises from the value of property beyond its jurisdiction.

While an appraisement of value is in general a decision on a question of fact and final, where it is arrived at by including property not within the jurisdiction of the State, it is absolutely illegal as made without jurisdiction.

The collection of a tax on a corporation on its capital stock based on a valuation which includes property situated out of the State would amount

to the taking of property without due process of law and can be restrained by the Federal courts.

In assessing the value of the capital stock of a corporation of Pennsylvania under the act of that State of June 8, 1891, coal which is owned by the corporation, but at the time of the assessment situated in another State not to be returned to Pennsylvania, should not be included.

THE plaintiff in error brings this case here to review the judgment of the Supreme Court of Pennsylvania, 206 Pa. St. 645, in favor of that State on a question raised by the plaintiff in error as to its liability to taxation by the State, upon certain coal of the value of $1,702,443, belonging to the plaintiff in error, which had been mined in Pennsylvania, and which, prior to the appraisement of the value of the capital stock of the company, pursuant to the Pennsylvania statute, for taxation in Pennsylvania, had been transported to and was situated in other States awaiting sale.

The case arises under proceedings provided for by the Pennsylvania statute for appraising, for the purposes of taxation, the value of the capital stock of corporations, such as the plaintiff in error, for the year ending in November, 1899. The statute under which the appraisement was made was passed June 8, 1891 (amendment of act of 1889), printed on page 229 *et seq.* of the Laws of Pennsylvania for that year. The sections of the act in question are four and five, and are reproduced in the margin.[1]

---

[1] Sections of the act of June 8, 1891.

SEC. 4. That hereafter, except in the case of banks, savings institutions and foreign insurance companies, it shall be the duty of the president, chairman, or treasurer of every corporation, having capital stock, every joint-stock association and limited partnership whatsoever, now or hereafter organized or incorporated by or under any law of this Commonwealth, and of every corporation, joint-stock association and limited partnership whatsoever, now or hereafter incorporated or organized by or under the laws of any other State or Territory of the United States, or by the United States or by any foreign government, and doing business in and liable to taxation within this Commonwealth, or having capital or property employed or used in this Commonwealth by or in the name of any limited partnership, joint-stock association, company, or corporation whatsoever, association or associations, copartnership or copartnerships, person or

In appraising the value of the capital stock of the plaintiff in error, pursuant to that statute, it is contended by it that the appraising officers should have deducted from the value

persons, or in any other manner, to make a report in writing to the auditor general, in the month of November, one thousand eight hundred and ninety-two, and annually thereafter, stating specifically:

First. Total authorized capital stock.

. Second. Total authorized number of shares.

Third. Number of shares of stock issued.

Fourth. Par value of each share.

Fifth. Amount paid into the treasury on each share.

Sixth. Amount of capital paid in.

Seventh. Amount of capital on which dividend was declared.

Eighth. Date of each dividend declared during said year ended with the first Monday of November.

Ninth. Rate per centum of each dividend declared.

Tenth. Amount of each dividend during the year ended with the first Monday in said month.

Eleventh. Gross earnings during the year.

Twelfth. Net earnings during said year.

Thirteenth. Amount of surplus.

Fourteenth. Amount of profit added to sinking fund during said year.

Fifteenth. Highest price of sales of stock between the first and fifteenth days of November aforesaid.

Sixteenth. Highest price of sales of stock during the year aforesaid.

Seventeenth. Average price of sales of stock during the year; and in every case any two of the following-named officers of such corporation, limited partnership or joint-stock association, namely: The president, chairman, secretary, and treasurer, after being duly sworn or affirmed to do and perform the same with fidelity, and according to the best of their knowledge and belief, shall, between the first and fifteenth days of November of each year, estimate and appraise the capital stock of the said company at its actual value in cash, not less, however, than the average price which said stock sold for during said year, and not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund, and when the same shall have been so truly estimated and appraised they shall forthwith forward to the auditor general a certificate thereof, accompanied with a copy of their said oath or affirmation, signed by them and attested by a magistrate or other person duly qualified to administer the same: *Provided,* That if the auditor general and state treasurer, or either of them, is not satisfied with the appraisement and valuation so made and returned, they are hereby authorized and empowered to make a valuation thereof, based upon the facts contained in the report herein required, or upon any information within their possession or that shall come into their possession,

of the stock the value of the coal mined in Pennsylvania by
the company and owned by it, but situated in other States,
there awaiting sale, and beyond the jurisdiction of the State

and to settle an account on the valuation so made by them for the taxes,
penalties and interest due the Commonwealth thereon, with right to the
company dissatisfied with any settlement so made against it to appeal
therefrom in the manner now provided by law; and in the event of the neg-
lect or refusal of the officers of any corporation, company, joint-stock asso-
ciation or limited partnership, for a period of sixty days, to make the
report and appraisement to the auditor general as herein provided, it shall
be the duty of the auditor general and state treasurer to estimate a valua-
tion of the capital stock of such defaulting corporation, company, joint-
stock association or limited partnership, and settle an account for taxes,
penalty and interest thereon, from which settlement there shall be no right
of appeal.

SEC. 5. That every corporation, joint-stock association, limited partner-
ship and company whatsoever, from which a report is required under the
twentieth section hereof, shall be subject to and pay into the treasury of the
Commonwealth, annually, a tax at the rate of five mills upon each dollar
of the actual value of its whole capital stock, of all kinds, including com-
mon, special and preferred, as ascertained in the manner prescribed in said
twentieth section, and it shall be the duty of the treasurer or other officers
having charge of any such corporation, joint-stock association or limited
partnership, upon which a tax is imposed by this section, to transmit the
amount of said tax to the treasury of the Commonwealth within thirty days
from the date of the settlement of the account by the auditor general and
state treasurer: *Provided*, That for the purposes of this act, interests in
limited partnerships or joint-stock associations shall be deemed to be capital
stock and taxable accordingly: *Provided also*, That corporations, limited
partnerships and joint-stock associations, liable to tax on capital stock
under this section, shall not be required to make report or pay any further
tax on the mortgages, bonds and other securities owned by them in their
own right; but corporations, limited partnerships and joint-stock associa-
tions holding such securities as trustees, executors, administrators, guard-
ians, or in any other manner, shall return and pay the tax imposed by this
act upon all securities so held by them as in the case of individuals: *And
provided further*, That the provisions of this section shall not apply to the
taxation of the capital stock of corporations, limited partnerships and
joint-stock associations, organized exclusively for manufacturing purposes
and actually ca rying on manufacturing within the State, excepting com-
panies engaged in the brewing and distilling of spirits or malt liquors and
such as enjoy and exercise the right of eminent domain: *Provided further*,
In case of fire and marine insurance companies the tax imposed by this sec-
tion shall be at the rate of three mills upon each dollar of the actual value
of the whole capital stock.

of Pennsylvania at the time the appraisement was made. This contention was overruled by the state courts.

The facts upon which the judgment rests were found by the court, and are. as follows:

"1. The Delaware, Lackawanna and Western Railroad Company was organized under the special act of the general assembly of Pennsylvania approved March 11, 1853, by the consolidation of the Liggetts Gap Railroad Company, incorporated under the act of April 7, 1832, whose name was, by the act of April 14, 1851, changed to Lackawanna and Western Railroad Company, and the Delaware and Cobbs Gap Railroad Company, incorporated by the act of April 7, 1849. Into the Delaware, Lackawanna and Western Railroad Company as formed by the merger of the Lackawanna and Western Railroad Company and the Delaware and Cobbs Gap Railroad Company were merged, December 27, 1865, the Keyser Valley Railroad Company; August 12, 1870, the Nanticoke Coal and Coke Company, and June 17, 1870, the Lackawanna and Bloomsburg Railroad Company. The company, as authorized by special act of Pennsylvania legislature, has its general office and treasury in the city and State of New York, though its corporate home is in Pennsylvania. It is authorized by law to own coal lands in Pennsylvania, and to mine, buy and sell coal and convey the same to market; and, in addition to its business of owning and operating an extensive system of railroads, is engaged in the business of mining, buying and selling coal. The proper officers of the company returned and appraised its capital stock as of the actual value, between the first and fifteenth days of November, 1899, of $48,470,000, and in making up the claim of the State for taxes for said year, the auditor general made no deductions whatever, but charged tax at five mills upon said aggregate valuation of $48,470,000, the said tax amounting to $242,350. Amongst other property in addition to its railroad, the company owned coal located at points outside of Pennsylvania in New York, Illinois and other States of the value of $1,702,443, and, as already stated,

no deduction was made by the auditor general in his statement, of account against the company for or with respect to this coal. All taxes assessed against the company for 1899 in other States, on coal located there, have been paid, according to the belief and so far as the secretary of the company can now, May 25, 1901, recall.

"There were other items in dispute in addition to the coal, and they were covered by defendant's appeal, but the attorney general, on behalf of the Commonwealth, and counsel for the defendant, entered into an agreement in writing as follows, viz.:

" 'And now, to wit, April 10, 1901, it is hereby agreed that the jury shall deduct and not include in its verdict any tax upon $1,702,444, being the value of coal held and owned at points in States other than Pennsylvania, according to the facts as set forth in the depositions of Fred. F. Chambers and W. H. Truesdale, defendant's treasurer and president, respectively, hereto attached and made part hereof. The said deduction having been made final judgment shall be entered upon the verdict of the jury in favor of the Commonwealth and against the defendant. The question of defendant's liability to the Commonwealth of Pennsylvania for taxes upon or in respect of said coal held, owned and stored at points in States other than Pennsylvania is hereby reserved, and it is agreed that it shall be submitted for the determination of the court. If the court shall be of the opinion that upon the facts stated in the aforesaid depositions of Fred. F. Chambers and W. H. Truesdale, attached to and made part hereof, the defendant is liable for tax to the Commonwealth of Pennsylvania upon coal thus held, owned and stored at points in States other than Pennsylvania, then judgment shall be entered in favor of the Commonwealth and against the defendant for the further sum of $8,512.21, being five mills upon the said $1,702,443, the value of the said coal, to which amount there shall be added the usual attorney general's commission of five per cent, either of the parties to be at liberty to file exceptions to, and appeal from, the decision of the court upon the said reserved

point with like effect as if the case had been tried by the court without a jury under the act of April 22, 1874.'

"3. The case having been submitted to the jury, a verdict was rendered as follows, viz.:

| | |
|---|---:|
| Tax .................................................... | $111,250 00 |
| Less five mills on coal, $1,702,443.00 ........... | 8,512 21 |
| | $102,737 79 |
| Less payment on account...................... | 100,000 00 |
| | $2,737 79 |
| Add attorney general's commission of 5 per cent.. | 136 88 |
| Verdict for............................ | $2,874 67 |

"The judgment entered upon said verdict has been paid by defendant, leaving open only the one question submitted to the court as aforesaid of the defendant's liability to taxation with respect to capital stock invested in coal located outside of Pennsylvania.

"4. The facts agreed upon by counsel for the Commonwealth and the company are set forth in the affidavits of W. H. Truesdale, president, and Fred. F. Chambers, the secretary and treasurer of the company, and, in so far as they relate to the reserved question, are as follows, viz.:

"'Under powers conferred by special charter previous to the adoption of the present constitution of Pennsylvania, the Delaware, Lackawanna and Western Railroad Company is largely engaged in the mining and purchasing of anthracite coal in Pennsylvania, nearly all of which coal it transports to points without said State and there sells. By far the greater part of this coal is transported from the mines for immediate delivery at points in other States, and is not kept or held in stock in said other States longer than is necessary for the purpose of transferring possession from this company to the purchaser; but at certain points in other States, as, for instance, at Buffalo, N. Y., and at Chicago, Ill., the company

keeps constantly on hand a stock of coal for purposes of sale, the same being stored in yards or upon docks maintained by the company for that purpose. The coal thus on hand awaiting sale between the first and fifteenth days of November, 1899, the date when the company's capital stock is required by law to be appraised for taxation, was of the value of not less than $1,702,443, and was included in the valuation of the company's capital stock upon which tax was charged in the auditor general's account. The coal thus on hand at that date was approximately the amount usually kept in stock at such points. The said coal when shipped from Pennsylvania was destined to said points in other States, with no intention of ever returning the same to Pennsylvania. On the contrary, said coal was intended to, and did, become part of the general mass of property in said other States, and the company is there annually taxed upon or in respect to the same, and was so taxed for 1899. When the coal thus kept in stock in the States of New York, Illinois, and other States outside of Pennsylvania is sold, the proceeds are returned to the company's treasury in the city and State of New York.

" 'In 1899 the company sold and delivered coal at points outside of the State of Pennsylvania of the aggregate value of not less than $18,587,258, but this was either contracted for before it left the mines or delivered upon, or within a comparatively short time after its arrival at the points in other States to which it was to be delivered. What I have said above was with reference only to coal kept in stock at points outside of Pennsylvania for purposes of sale.'

"5. The corporation defendant is authorized by law to transact business and to hold lands in other States for depot, wharfage and coal-yard accommodations and to make such agreements and contracts with corporations and individuals of other States as may be necessary and expedient for the transporting and vending of coal mined and purchased by it, and defendant is also authorized to have and maintain its general office and place of business, and to hold its stock-

holders' meeting, in the State of New York, and to have as president, directors and other officers non-residents of the State of Pennsylvania. The company is taxable upon the value of the property represented by its capital stock, and not upon the amount of the latter."

*Mr. M. E. Olmsted,* with whom *Mr. W. W. Ross* and *Mr. A. C. Stamm* were on the brief, for plaintiff in error:

The tax claimed is a tax on property. *Pennsylvania* v. *N. Y., Penna. & O. R. R. Co.,* 188 Pa. St. 169; *Bank of Commerce* v. *New York City,* 2 Black, 620; *Bank Tax Case,* 2 Wall. 200; *Commonwealth* v. *Standard Oil Co.,* 101 Pa. St. 145.

It was not within the intent or power of the legislature to impose a tax on tangible property without the territorial limits, and protection of the laws, of the State. *Commonwealth* v. *Del., L. & W. Ry. Co.,* 145 Pa. St. 96; *Commonwealth* v. *Mining Co.,* 5 Pa. County Ct. Rep. 89, and other cases in note thereto; *Commonwealth* v. *Westinghouse Co.,* 151 Pa. St. 265; *Commonwealth* v. *Dredging Co.,* 122 Pa. St. 386.

The coal involved in this case was permanently located and actually taxed in other States. *Commonwealth* v. *Coal Co.,* 197 Pa. St. 351.

This coal is exempt in Pennsylvania as it is taxable in other States under *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 U. S. 517; *Coal Co.* v. *Balis,* 156 U. S. 577; *United States* v. *Knight,* 156 U. S. 1, 13; *Kelley* v. *Rhoads,* 188 U. S. 1; *Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82; *Finley* v. *Philadelphia,* 32 Pa. St. 381.

Taxing property having its *situs* in another State violates the Federal Constitution. It violates interstate comity and interstate commerce. *McCulloch* v. *Maryland,* 4 Wheat. 316, 429; *St. Louis* v. *Ferry Co.,* 11 Wall. 423; *Hays* v. *Pacific Mail,* 17 How. 596; *State Tax on Foreign-held Bonds,* 15 Wall. 300; *Railroad Co.* v. *Jackson,* 7 Wall. 262; *Pullman Co.* v. *Pennsylvania,* 141 U. S. 18; *Adams Express Co.* v. *Ohio,* 165

U. S. 194; *Adams Express Co.* v. *Ohio,* 166 U. S. 185, 224; *Am. Refrigerator Co.* v. *Hall,* 174 U. S. 70.

*Mr. Hampton L. Carson,* Attorney General of the State of Pennsylvania, with whom *Mr. Frederic W. Fleitz* was on the brief, for defendant in error:

The tax claimed is not a tax directly laid upon tangible property situate outside of the State, but is a capital stock tax imposed directly upon the capital stock of a Pennsylvania corporation at a fixed rate of five mills upon each dollar of the actual value of the whole capital stock, including bonds, mortgages, moneys at interest, owned by the company, franchises and property of other kinds. *Commonwealth* v. *Railroad Co.,* 188 Pa. St. 185; *Commonwealth* v. *Coal Co.,* 197 Pa. St. 553; Laws of Pennsylvania, 1891, 229.

The legislature has a general power of taxation which is necessary for the existence and preservation of the government.

It may be exercised to any extent to which the State may choose to carry it, not in violation of the powers granted to the Federal Government or the restrictions set forth in the state constitution. *Sharpless* v. *Philadelphia,* 21 Pa. St. 160.

The legislature may tax the same subject once, twice or oftener. Such power is not prohibited by the constitution, the only feature required being that the intention must be clear. *Commonwealth* v. *Coal Co.,* 156 Pa. St. 488; *Commonwealth* v. *Lehigh C. & N. Co.,* 162 Pa. St. 603.

Conceding that instrumentalities of interstate commerce cannot be taxed by the State where the taxation interferes with the commerce itself it is a well settled principle as to tangible property that at times it is to be treated as practically intangible because of its roving character. Vessels engaged in foreign or interstate commerce have their *situs* at their port of registry and are taxable there, and shares of stock in national banks, located in this State, owned by non-residents of this State are taxable here. Vessels, if unregistered, have

their *situs* for taxation in the State which is the domicil of their owner. *Commonwealth* v. *Standard Oil Co.*, 101 Pa. St. 119; *Pullman Co.* v. *Commonwealth*, 107 Pa. St. 156; aff'd *Pullman Co.* v. *Pennsylvania*, 141 U. S. 18; *Commonwealth* v. *Dredging Co.*, 122 Pa. St. 386; *Commonwealth* v. *D., L. & W. R. R. Co.*, 145 Pa. St. 96; *Commonwealth* v. *Coal Co.*, 197 Pa. St. 551.

The principal subjects of corporate taxation in Pennsylvania are capital stock, shares and franchises. The tax on capital stock of corporations has always been levied upon capital stock according to the value of the property which it represents. *Commonwealth* v. *Standard Oil Co.*, 101 Pa. St. 119; Whitworth on Tax. of Corp. in Pennsylvania, ch. I, § 14, pp. 59–140.

The capital stock tax claimed is not a tax laid, or sought to be laid, directly upon tangible property beyond the territorial limits of Pennsylvania or the protection of her laws. Deductions from the value of the capital stock of a Pennsylvania corporation cannot be allowed for property which has not acquired a foreign *situs*, because of its return in value to the treasury of the company. It is the value of the stock that is taxed and not the property representing that value. *Commonwealth* v. *Mining Co.*, 5 Pa. County Ct. Rep. 89; *Commonwealth* v. *Coal Co.* 197 Pa. St. 551.

We do not concede that the coal in question was permanently located and actually taxed in States other than Pennsylvania; nor do we concede the pertinency of the case of *Brown* v. *Houston*, 114 U. S. 622, and the authorities cited in support and confirmation thereof.

Before the coal had started on its journey, the right of Pennsylvania to tax capital stock, into the value of which the value of the coal had entered, had attached and could not be divested.

The cases cited by plaintiff in error as to state taxes on goods in course of transportation are inapplicable to this case.

There is no Federal question. *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *People* v. *Commissioners*, 104 U. S. 466.

MR. JUSTICE PECKHAM, after making the foregoing state-
ment, delivered the opinion of the court.

The Supreme Court of Pennsylvania bases its decision in
this case on the authority of *Commonwealth* v. *Pennsylvania
Coal Co.*, 197 Pa. St. 551, which it regards as controlling upon
the question involved. The right to include the value of the
coal in question in the valuation of the capital stock of the
company is based upon the construction given by the Su-
preme Court of Pennsylvania to the Pennsylvania statute of
1891, and this court is concluded by that construction. *People*
v. *Weaver*, 100 U. S. 539, 541.

The only question for this court to determine is whether,
in refusing to deduct the value of the coal mined in Pennsyl-
vania, and which at the time of the appraisement was situated
outside the jurisdiction of the State, from the value of the
capital stock, the state court denied any right of the plaintiff
in error, which was protected by the Federal Constitution.

The coal itself, when the appraisement of the value of the
capital stock was made, was concededly beyond the jurisdic-
tion of the State of Pennsylvania. It was taxable (and in
fact was taxed) in the States where it rested for the purpose
of sale, at the time when the appraisement in question was
made. *Brown* v. *Houston*, 114 U. S. 622. In that case the
court held that the coal was properly taxed by the State of
Louisiana, though it had but lately arrived from the State of
its origin, Pennsylvania, and was at the time of the taxation
awaiting sale in Louisiana, and was, in fact, soon thereafter
sold and taken out of the country to a foreign State. It was
said that the coal, on arrival at New Orleans for the purpose
of sale, at once became intermingled with the general property
of the State of Louisiana and was taxable like any other tangi-
ble property therein. In *Coe* v. *Errol*, 116 U. S. 517, the
question was relative to the validity of the tax on the lumber
imposed in the State of its origin, as that State had taxed the
lumber before it had actually left the State, although it was

intended for transportation to another State for sale. It was held that the tax was proper, so long, and so long only, as such transportation had not yet actually commenced. After that the State had no right to tax it. In the case at bar the coal had been transported to and was actually resting in another State for sale when the appraisement was made, and under the foregoing cases it was then intermingled with property in the foreign State where it rested and was at that time liable to taxation therein. The right of the foreign State to tax under such circumstances was again upheld in *Pittsburg & Southern Coal Co.* v. *Bates*, 156 U. S. 577, where the coal was taxed while awaiting sale in such State. See *Kelley* v. *Rhoads*, 188 U. S. 1; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 82. We must, therefore, take it as plain, under the foregoing decisions, that this coal, at the time of the appraisement of the value of the capital stock for taxation by Pennsylvania, had become intermingled with the mass of property in the other States, to which portions of it had respectively been sent, and that it was a proper subject for taxation for both state and local purposes in such States. Where the proceeds of the sale might go when the coal was sold, whether into the treasury of the company at its offices in New York City, or indirectly to the State of its incorporation, is not important. The coal had not been sold when the appraisement of the value of the capital stock was made, and at that time it was outside the jurisdiction of the State of Pennsylvania. A tax on that coal, *eo nomine*, or specifically, could not then be laid by that State, as counsel concede.

Now, was this tax, in substance and effect, laid upon the coal which was beyond the jurisdiction of Pennsylvania? The Supreme Court of Pennsylvania has held that a tax on the value of the capital stock is a tax on the property and assets of the corporation issuing such stock. *Commonwealth* v. *Standard Oil Co.*, 101 Pa. St. 119, 145; *Fox's Appeal*, 112 Pa. St. 337; *Commonwealth* v. *Delaware &c. R. R. Co.*, 165 Pa. St. 44. This court has also frequently held that a tax on the

value of the capital stock of a corporation is a tax on the property in which that capital is invested, and in consequence no tax can thus be levied which includes property that is otherwise exempt. *Bank of Commerce* v. *New York City*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200; *Pullman's Car Co.* v. *Pennsylvania*, 141 U. S. 18, 25; *Fargo* v. *Hart*, 193 U. S. 490, 498, 499.

The cases of the taxation upon the value of the capital stock of the banks, or on a valuation equal to the amount of their capital stock paid in or secured to be paid in, as reported in 2 Black and 2 Wall., *supra*, involved the question of the taxation of United States bonds and other securities of the United States, in which the capital of the banks was invested, which were exempt from taxation; but the holding of the court was that those bonds and securities were in fact taxed by a tax upon the value of the capital of the bank, which was invested in such bonds and securities. Of course, the distinction between the capital stock of a corporation, and the shares into which it may be divided and held by individual shareholders, is borne in mind and recognized, and nothing herein affects that distinction. The question here is simply as to the value of the capital stock with reference to the assessment and taxation upon the corporation itself which issues it, and has nothing to do with the individual shareholder. *Van Allen* v. *Assessors*, 3 Wall. 573; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134, 146.

Counsel for defendant in error find no fault with the principle stated in *Brown* v. *Houston*, *supra*, and that line of cases, nor with the general proposition laid down in the other cases cited, that a tax on the value of the capital stock is a tax on the property of the corporation in which the capital is invested. They deny, however, their applicability to the facts of this case. They concede that the courts of Pennsylvania have held that tangible property, permanently located outside of the State, for the use and benefit of the corporation, and owned by it, is exempt from taxation under this statute.

They also concede that it was never within the intent or the power of the legislature to impose a tax upon tangible property when held outside of the territorial limits of the State; but they insist that this tax is not *eo nomine* or specifically upon tangible property outside the State, and they contend that the State has the right to consider the value of the coal as having entered into the value of the capital stock as soon as it was mined, and that the State then had the right to treat the coal as one of the items that went into the value of the capital stock, just the same as they contend for the right to so treat the money realized from the coal upon its sale in the foreign State when it has been returned to the State and has gone into the surplus fund. The position of the defendant in error, then, is this: The tax in question is not a tax upon coal, treated as tangible property and a tangible asset specifically subject to tax, but is a tax upon the value of the capital stock of the Pennsylvania corporation at the fixed rate of five mills for each dollar of the actual value of the whole capital stock, including bonds, mortgages, moneys at interest, franchises, and property of other kinds, and that the statute in question does not impose a tax on the coal itself. Counsel do not contend that a tax on the value of the capital stock of a corporation is not a tax on its property in a certain sense, but they contend that while a tax on capital stock is a property tax, yet the property of the corporation, for the purpose of taxation, is reached through the tax imposed *directly* upon the stock (197 Pa. St. 553), and that there is a distinction between a tax on capital stock and a direct tax on personal property. Therefore tangible property situated outside the State, under the circumstances set forth in this case, is not directly taxed by a tax on the value of the capital stock, or at least there is no specific tax upon it, and the tax is not illegal. It is also said that by reason of the alleged transitory character of the coal it has never, in law, lost its original domicil, which still remains in Pennsylvania and is subject to be there included in the value of the capital stock of the corporation.

The asserted transitory nature of this property does not seem to us to be material. At the time of the appraisement it had been transported beyond the jurisdic.ion of the State, never to return in kind, but was intended to be sold in the foreign State. Such property is entirely unlike the property involved in *Commonwealth* v. *American Dredging Co.*, 122 Pa. St. 386. That property consisted of vessels, or scows, or tugs, only temporarily out of the State of Pennsylvania, for the purpose of engaging in business, and liable to return to the State at any time, and was without any actual *situs* beyond the jurisdiction of the State itself. However temporary the stay of the coal might be in the particular foreign States where it was resting at the time of the appraisement, it was definitely and forever beyond the jurisdiction of Pennsylvania. And it was within the jurisdiction of the foreign States for purposes of taxation, and in truth it was there taxed. We regard this tax as in substance and fact, though not in form, a tax specifically levied upon the property of the corporation, and part of that property is outside and beyond the jurisdiction of the State which thus assumes to tax it. This is not a question as between direct or indirect taxation, such as arises under the Federal Constitution when Congress lays and collects taxes by virtue of the power given it by that instrument. No question of uniformity or apportionment of taxes arises here. The question now discussed is simply whether, under this statute of the State, property of the corporation is in substance and effect taxed while it is beyond the jurisdiction of the State and is never to return. When the Federal Constitution says no tax or duty shall be laid on articles exported from any State, such articles cannot be taxed, directly or indirectly, and a tax on foreign bills of lading is void because it in effect is a tax on exports. *Fairbank* v. *United States*, 181 U. S. 283, 289.

So, if the State cannot tax tangible property permanently outside the State and having no *situs* within the State, it cannot attain the same end by taxing the enhanced value of the

capital stock of the corporation which arises from the value of the property beyond the jurisdiction of the State.

We think the state court is right in deducting, as it does, the value of the tangible property, when permanently held in another State, and we think that for the same reason the same rule should obtain in the case of tangible property situated, as this coal was. We cannot see the distinction, so far as the question now before the court is concerned, between a tax assessed upon property, *eo nomine*, or specifically, when outside the State; and a tax assessed against the corporation upon the value of its capital stock to the extent of the value of such property, and which stock represents to that extent that very property. If the property itself could not be specifically taxed because outside the jurisdiction of the State, how does the tax become legal by providing for assessing the tax on the value of the capital stock to the extent it represents that property and from which the stock obtains its increased value? Can the mere name of the tax alter its nature in such case? If so, the way is found for taxing property wholly beyond the jurisdiction of the taxing power by calling it a tax on the value of capital stock or something else, which represents that property. Such a tax, in its nature, by whatever name it may be called, is a tax upon the specific property which gives the added value to the capital stock.

Although the coal may have entered into the value of the capital stock when mined, the question is whether the value of the stock in November, 1899, when the appraisement was directed by the statute to be made, should not be decreased by deducting the value of the coal therefrom which was not in the State at the time of the appraisement. We think it should; otherwise the tax amounts in substance to a specific tax on the coal. Taking the different prices of the stock at different times in the year, and the average price thereof, and otherwise following the provisions of the statute, simply makes a way of finding the value of the stock between the first and fifteenth of November in each year. That is the material

time when the value is to be ascertained, and at that time this coal was not in the State. An appraisement thus made, which includes such property, is to that extent without jurisdiction and illegal. It is true that in general an appraisement of, or an assessment of a tax upon, value is a decision upon a question of fact, and a difference of opinion as to the value between the assessing officer and the court is immaterial, and the decision of the former is final. But where the appraisement is arrived at by including therein tangible property, which is beyond the jurisdiction of the State, and which, therefore, the assessing officers had no jurisdiction to appraise (and none could be given them by the statute), such an appraisement or assessment is absolutely illegal, as made without jurisdiction.

The next question is whether there is a right to relief in a case like this, founded upon the provisions of the Federal Constitution. We think there is. The collection of a tax under such circumstances would amount to the taking of property without due process of law, and a citizen is protected from such taking by the Fourteenth Amendment. In *Louisville &c. Ferry Co.* v. *Kentucky*, 188 U. S. 385, the ferry company was operating a ferry across the Ohio River between Jeffersonville in Indiana and Louisville in Kentucky, under two franchises, one granted by the proper authorities of Indiana for maintaining a ferry across that river from the Indiana shore to the Kentucky shore, and the other granted by the State of Kentucky to carry on a ferry business from the Kentucky to the Indiana shore. The tax was laid by Kentucky upon the company, a part of which the company insisted was a tax upon it by reason of its ownership of the Indiana franchise, which it contended was property situated in Indiana and beyond the jurisdiction of Kentucky. The courts of Kentucky held that, under the statute, "the board of valuation and assessment did not attempt to assess or tax its revenues coming from the exercise of its franchise in the transportation of persons and property over the Ohio River. But under certain sections of the Kentucky statutes it assessed

the value of appellant's franchise, which is its intangible property. The board did not assess, or attempt to assess, the property, either tangible or intangible, which it owned in the State of Indiana." This court stated: "It thus appears from the admitted facts and from the opinion of the court below that the state board, in its valuation and assessment of the franchise derived by that company from Kentucky, included the value of the franchise obtained from Indiana for a ferry from its shore to the Kentucky shore. In short, as stated by the Court of Appeals, the value of the franchise of the ferry company was fixed 'as if it conducted all its business in the territorial limits of the State of Kentucky,' making no deduction for the value of the franchise obtained from Indiana." It was held that the franchise granted by Indiana to maintain a ferry from the Indiana shore was wholly distinct from the franchise obtained from Kentucky to maintain the ferry from the Kentucky shore, although the enjoyment of both was essential to a complete ferry right for transportation of persons and property across the river both ways And each franchise was property entitled to the protection of the law. After holding that the privilege of maintaining a ferry in Kentucky from the Indiana shore to the Kentucky shore was a franchise derived from Indiana, and as that franchise was a valuable right of property, the question arose whether it was within the power of Kentucky to tax it, directly or indirectly, and this court said: "It is said that the Indiana franchise has not been taxed, but only the franchise derived from Kentucky; that the tax is none the less a tax on the Kentucky franchise, because of the value of that franchise being increased by the acquisition by the Kentucky corporation of the franchise granted by Indiana. This view sacrifices substance to form. If the board of valuation and assessment, for purposes of taxation, had separately valued and assessed at a given sum the franchise derived by the ferry company from Kentucky, and had separately valued and assessed at another given sum the franchise obtained from Indiana, the result would have been

the same as if it had assessed, as it did assess, the Kentucky franchise as an unit upon the basis of its value as enlarged or increased by the acquisition of the Indiana franchise." And again: "We recognize the difficulty which sometimes exists in particular cases in determining the *situs* of personal property for purposes of taxation, and the above cases have been referred to because they have gone into judgment and recognize the general rule that the power of the State to tax is limited to subjects within its jurisdiction or over which it can exercise dominion. No difficulty can exist in applying the general rule in this case; for, beyond all question, the ferry franchise derived from Indiana is an incorporeal hereditament derived from and having its legal *situs* in that State. It is not within the jurisdiction of Kentucky. The taxation of that franchise or incorporeal hereditament by Kentucky is, in our opinion, a deprivation by that State of the property of the ferry company without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States; as much so as if the State taxed the real estate owned by that company in Indiana." And in conclusion it was said: "We decide nothing more than it is not competent for Kentucky, under the charter granted by it, and under the Constitution of the United States, to tax the franchise which its corporation, the ferry company, lawfully acquired from Indiana, and which franchise or incorporeal hereditament has its *situs*, for purposes of taxation, in Indiana."

It is plain that in the case at bar the coal had lost its *situs* in Pennsylvania by being transported from that State to foreign States for the purposes of sale, with no intention that it should ever return to its State of origin. It was, therefore, as much outside the jurisdiction of the State of Pennsylvania to tax it as was the Indiana franchise in the case just cited, and it has been taxed just as directly and specifically under the facts stated in this case as was the Indiana franchise taxed in Kentucky by the valuation of the Kentucky franchise, which value was increased by the value of the franchise created

by Indiana. Taxation of the coal in this case deprived the owner of its property without due process of law, as is held in the above case, and the owner is entitled to the protection of the Fourteenth Amendment, which prevents the taking of its property in that way.

The judgment of the Supreme Court of Pennsylvania is reversed and the cause remanded for further proceedings not inconsistent with the opinion of this court.

*Reversed.*

The CHIEF JUSTICE dissented.