SALISBURY BEACH ASSOCIATES *vs.* ASSESSORS OF SALISBURY.

Essex.    November 9, 1916. — January 3, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Mandamus. Practice, Civil,* Report.   *Tax,* Apportionment after assessment and before sale of land for payment of tax.

Where a petition for a writ of mandamus was reported by a single justice "for the consideration and determination of the full court, such order to be entered as law and justice may require," the reservation was treated as intended to report to the full court only the questions of law disclosed by the record, this being all that properly could be reserved or reported under R. L. c. 156, § 7; c. 173, § 105.

On a petition for a writ of mandamus to compel the assessors of a town under St. 1909, c. 490, Part I, § 88, to apportion a tax on a large tract of land from which various lots had been sold after the assessment of the tax, where it appeared that the first request for such apportionment was made more than two years and seven months after the assessment of the tax and more than five weeks after the lien for the taxes in the year of the assessment had expired as to parcels of land that had "in the meantime been alienated" under the provisions of § 36 of Part II of the same chapter, it was *held* that the statute did not apply to a request for an apportionment made after the lien for the collection of taxes on the portion of the land sold had expired, and that the petition for the writ must be denied.

PETITION, filed on February 1, 1916, by the trustees of the Salisbury Beach Associates for a writ of mandamus addressed to the assessors of the town of Salisbury commanding them to apportion the tax assessed for the year 1913 upon the land of the petitioners, alleging that the land had been divided both by sale and mortgage after the tax of 1913 had been assessed, that the division had been recorded in the registry of deeds, that a portion of the tax assessed for the year 1913 on the land remained unpaid and that no part of the land ever had been advertised for sale for the payment of such tax, that the petitioners on November 8, 1915, had filed with the assessors a written request for such apportionment and on December 18, 1915, had filed a like request as to a certain lot not included in a mortgage which covered the rest of the petitioners' land.

The case came on to be heard before *Loring,* J., who at the request of the parties reported it upon the pleadings and an agreed statement of facts "for the consideration and determination of the

full court, such order to be entered as law and justice may require."

St. 1909, c. 490, Part I, § 88, is as follows: "If real estate is divided by sale, mortgage, upon a petition for partition or otherwise after a tax has been assessed thereon and such division has been duly recorded in the registry of deeds, the assessors at any time before said real estate has been sold for payment of taxes, upon the written request of the owner or mortgagee of any portion thereof, shall apportion said tax and the costs and interest accrued thereon upon the several parcels thereof, in proportion to the value of each, and only the portion of said tax, interest and costs so apportioned upon any such parcel shall continue to be a lien upon it; and the owners or mortgagees shall be liable only for the tax apportioned upon the parcel owned in whole or in part by them respectively."

Part II, § 36, of the same statute is as follows: "Taxes assessed upon land, including those assessed under the provisions of sections sixteen, seventeen and eighteen of Part I, shall with all incidental charges and fees be a lien thereon from the first day of May in the year of assessment. Such lien shall terminate at the expiration of two years from the first day of October in said year, if the estate has in the mean time been alienated; otherwise it shall continue until an alienation thereof. There shall be no lien for taxes re-assessed if the property is alienated before the re-assessment. Said taxes, if unpaid for fourteen days after demand therefor, may, with said charges and fees, be levied by sale of the real estate, if the lien thereon has not terminated prior to the giving of the notice of sale."

*A. N. Frost,* for the petitioners.

*J. T. Choate,* (*A. F. Priest* with him,) for the respondents.

RUGG, C. J. This petition for a writ of mandamus was reported "for the consideration and determination of the full court, such order to be entered as law and justice may require." Respecting similar phraseology, it was said in *Scanlon* v. *Carey,* 207 Mass. 285, 286, that "The reservation in this case is informal, but the parties have treated it, and we treat it as intended to report to this court questions of law that arose at the hearing, which was all that properly could be reserved or reported under the statute." R. L. c. 156, § 7; c. 173, § 105. *Boucher* v. *Salem Rebuilding Commission,* 225 Mass. 18.

The petitioners are owners of Salisbury Beach, which contains about five hundred acres of land. The respondents are the assessors of the town of Salisbury, within the territory of which the beach lies. On November 8, 1915, the petitioners notified the respondents that the real estate assessed to them in 1913 had been divided by sale since the tax for 1913 had been assessed, and such division recorded, and requested them "to apportion said tax of 1913, and the costs and interest accrued thereon, upon the several parcels thereof in proportion to the value of each," in accordance with St. 1909, c. 490, Part I, § 88. On December 18, 1915, another request for apportionment was addressed to the respondents, stating that the Lawrence Trust Company had a duly recorded mortgage upon all their property except Lot 437, Sheet 3200–N on a plan filed in the registry of deeds, and asking apportionment of the tax "upon said parcel and upon the rest of the registered land which is covered by said mortgage." Apparently this mortgage was subsequent to April 1, 1913. The petitioners have paid all but $769.31 out of $7,142.65, the total tax assessed as of April 1, 1913. The respondent assessors refused to make the apportionment and this petition is brought to compel them to do so.

The earlier of the two requests for apportionment was made on November 8, 1915, more than five weeks after the lien for the taxes of 1913 had expired as to parcels of land which had in the meantime been alienated. St. 1909, c. 490, Part II, § 36. It is one of the agreed facts that a large number of lots were sold out of the beach estate by the petitioners after April 1, 1913, and before April 1, 1914. Rights as to collection of the tax are limited somewhat by any apportionment. *Rogers* v. *Gookin,* 198 Mass. 434. But it is manifest that the right to an apportionment under § 88 of Part I of the tax act was not intended to apply to cases where the lien as to such parts of the estate as have been alienated is gone. Grave difficulties might arise as to the collection of the whole and the parts of the tax, and the validity of such an apportionment. Prompt collection of taxes is essential to the support of government. The duties of a tax collector as to taxes committed to him are onerous and his liability is stringent. *Boston* v. *Turner,* 201 Mass. 190, 196. The design of tax laws is to promote speedy collection in order that government may not be hampered by delays. They are to be interpreted in the light of this necessary purpose.

The use of the word "lien" in that part of § 88 which provides that only the portion of the tax apportioned upon any parcel "shall continue to be a lien upon it," is an express indication that no apportionment can be demanded unless made in time for a lien effective for the practical purposes of a tax collector to remain upon the several parcels after the apportionment shall have been made. The provision, that the request for an apportionment may be made "at any time before said real estate has been sold for payment of taxes," does not stretch the time for the request to a period when the lien has expired.

It follows that the petitioners did not make a seasonable application for an apportionment and the assessors rightly refused to comply with their request.

*Petition dismissed.*