ATLANTIC MARITIME COMPANY *vs.* CITY OF GLOUCESTER.

Essex.    October 19, 1917. — November 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Report by judge.    *Taxation,* Of tangible personal property.    *Ship.*
*Words,* "Decision."

Under the provision added to R. L. c. 173, § 105, by St. 1917, c. 345, that "A
justice of the Supreme Judicial Court or of the Superior Court may, upon request
of the parties, in any case where there is agreement as to all the material facts,
report the case to the full court for determination without making any decision,"
in making such a report in a case where material facts are omitted from the
statement of agreed facts that might be inferred from the facts stated it is
the duty of a judge of the Superior Court to draw and report all the material
inferences of fact.

Upon a petition against the city of Gloucester under St. 1909, c. 490, Part I, § 77,
appealing from the refusal of the assessors of that city to abate a tax upon
fishing vessels belonging to the petitioner, where the judge of the Superior Court
before whom the case came for hearing reported it "without decision of the
case" by agreement of the parties for determination by this court upon an
"agreed statement of facts submitted as evidence," the reservation was dis-
charged and the case was remanded to the Superior Court for further hearing,
because the judge of that court had omitted to perform the duty of making a
finding of fact as to the *situs* for taxation purposes of the vessels of the petitioner.

In the same case it appeared from the facts reported that the petitioner was a
corporation organized under the laws of the State of Maine and having its
home office at Kittery in that State, while its general offices where its books
and papers were kept and its bills were paid were in Boston and the vessels all
were registered under the laws of the United States in the office of the collector
of the port of Boston, that all the vessels were on the high seas engaged in
catching fresh fish and supplying them for the Boston market and at times
also for markets in other States and occasionally, although infrequently, for the
market of Gloucester, that at Gloucester the petitioner owned and continuously
used a wharf on which were several buildings, including a storehouse, and
that some of these buildings were used occasionally for the curing, storing and
sale of the fish that were brought there by the petitioner's vessels, that the
petitioner employed there a "boss of the wharf," who looked after the vessels
as they arrived, and that all the petitioner's vessels went once or more each year
to Gloucester for various purposes, including general repairs, additions to and
renewals of their fittings, supplies and stock and for all purposes for which such
vessels might resort to a harbor, although at times resort was had to other
ports for these purposes. *Held,* that the fact that the petitioner's vessels put
into the port of Gloucester regularly for repairs and for fitting out, that not being
their home port or their port of registration, was not enough to fix their *situs*
there for purposes of taxation, and that on the record the petitioner was entitled
as matter of law to an abatement of the portion of its tax imposed upon these
vessels.

PETITION, under St. 1909, c. 490, Part I, § 77, filed in the Superior Court on May 6, 1912, by the Atlantic Maritime Company, a corporation organized under the laws of the State of Maine, appealing from the refusal of the assessors of the city of Gloucester to abate a tax for the year 1911 imposed upon fishing vessels of the petitioner.

The case came on to be heard by *Lawton*, J., upon an agreed statement of facts submitted as evidence, whereupon the judge by agreement of the parties "in accordance with the provisions of St. 1917, c. 345," reported the case to this court for determination without making any decision thereon.

St. 1917, c. 345, added a last sentence to R. L. c. 173, § 105, as previously amended, so that that section now reads as follows:

"Section 105. A justice of the Supreme Judicial Court or of the Superior Court, after verdict, or after a finding of the facts by the court, may report the case for determination by the full court. If the justice is of opinion that an interlocutory finding or order made by him ought to be determined by the full court before any further proceedings in the trial court, he may report the case for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties. A justice of the Supreme Judicial Court or of the Superior Court may, upon request of the parties, in any case where there is agreement as to all the material facts, report the case to the full court for determination without making any decision thereon."

The case was submitted on briefs.

*T. M. Vinson & C. D. Lanning*, for the petitioner.

*M. F. Buckley*, for the respondent.

RUGG, C. J. This is a petition to the Superior Court by way of appeal under St. 1909, c. 490, Part I, § 77, from a refusal by the assessors of the city of Gloucester to abate a portion of the taxes assessed upon the petitioner for the year 1911. The case was sent to a commissioner under § 79, who made a report of certain facts. The facts thus found were presented by stipulation of the parties to a judge of the Superior Court as an "Agreed statement of facts submitted as evidence." He thereupon signed a report in these words: "By agreement of the parties the case is ordered to be reported to the Supreme Judicial Court without decision of the case by the court, in accordance with the provisions of St. 1917, c. 345."

The effect of that statute simply is to add a final sentence to § 105 of R. L. c. 173, as amended by St. 1910, c. 555, § 5. Under the law as it stood before this latest amendment a Superior Court judge could report to the full court questions of law arising in an action at law in two classes of cases only, (1) after a verdict by a jury, a power conferred first by St. 1859, c. 196, § 32, whereby the Superior Court was established, and (2) after a finding of the facts made by the judge, a power conferred first by St. 1878, c. 231, § 1. These two classes cover the vast majority of cases. No power was conferred by the statutes enacted before 1917 to report a case where there was an agreement by parties as to all the material facts. Although instances may be found where such cases have come before this court by report, *Berton* v. *Atlas Assurance Co.* 203 Mass. 134, and have been considered *sub silentio* without any question of practice being raised, almost without exception they have come by appeal from judgment ordered by the Superior Court which necessarily involved a determination of all questions of law as well as of fact in issue. See, for example, *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333, and cases cited; *Harmon* v. *Sweet*, 221 Mass. 587, 598, and cases cited. Manifestly the purpose of St. 1917, c. 345, was to confer upon the Superior Court authority to report a case when all the material facts were agreed and submitted to the court. It added to the two classes of cases above stated the power to report a third class of cases to the full court, namely, when all the material facts are agreed.

The word "decision" in the grant of power in the present statute to report "without making any decision thereon" is confined to decision of the issue of law raised at the trial. It put facts agreed upon the same footing as a verdict by the jury or a finding by the judge, so far as concerns power to report a case. The statute does not mean that, when a finding of fact must be made in order to present a pure question of law as decisive of the case, the judge of the Superior Court can omit to make that finding and merely pass the case on to be decided both as to fact as well as law by this court. Abandonment of the judicial function by the trial court was not intended by the statute. If material facts, whether primary or ultimate, express or inferential, are omitted from facts agreed and submitted, it becomes the duty of

the Superior Court judge to find those facts before he can report under the statute. Even though the ultimate facts may rest upon inferences, the duty of determining what inferences are the most rational, and of drawing such inferences from the other facts agreed, rests on the Superior Court judge before he can report the case. If such inferences need to be drawn in order to reach the ultimate essential facts, then there has not been "agreement as to all the material facts" by the parties within the meaning of those words in the statute.

The duty of weighing evidence and of finding facts in the first instance in an action at law is not an appropriate function of a court of last resort. The underlying principle of our judicial system is that the full bench of the Supreme Judicial Court in actions at law can consider and decide only questions of law. It is not designed that it should decide questions of fact. The present statute does not undertake to disturb that underlying principle. It was decided in *Churchill* v. *Palmer*, 115 Mass. 310, 313, that "The authority given by statute to the Superior Court to make reports to this court extends only to questions of law." This statement was quoted with approval in *Electric Welding Co. Ltd.* v. *Prince*, 200 Mass. 386, 392, where it was said further that "Questions of discretion or questions of fact of any other kind cannot be carried to the full court either by report or by exception or appeal." *Mann* v. *Brewer*, 7 Allen, 202, 204. In substance the same principle has been applied in many other cases, most of which decided up to that time were quoted in *Smith* v. *Lincoln*, 198 Mass. 388, 392, and need not here be repeated. Subsequent decisions, where the same principle has been declared, are *Commonwealth* v. *National Contracting Co.* 201 Mass. 248, *Scanlon* v. *Carey*, 207 Mass. 285, *Boucher* v. *Salem Rebuilding Commission*, 225 Mass. 18, *Salisbury Beach Associates* v. *Assessors of Salisbury*, 225 Mass. 399, *Mansfield* v. *Secretary of the Commonwealth*, *ante*, 262. Nothing contrary to this established principle can be supposed to have been in the mind of the court in *Williams* v. *Roxbury*, 12 Gray, 21, decided before the Superior Court was established.

A statement of agreed facts submitted as evidence is a recognized method of presenting a case to a court. It may cover the whole or a part of the facts essential to reach a conclusion, or to

raise a question of law.  When a case is submitted in this way, St. 1913, c. 716, has no application because facts submitted as evidence are merely evidence and stand on the same general footing and fall within the same general classification as any other kind of evidence submitted to a jury or to a judge sitting without a jury, in that there must be a further finding of the ultimate fact or facts essential for the determination of the case, (unless those ultimate facts also are agreed) by the tribunal charged with finding the facts.  *Frati* v. *Jannini,* 226 Mass. 430.

It appears from an examination of the record that the decisive question in controversy between the parties in the case at bar was whether certain fishing and other vessels belonging to the petitioner had such *situs* in Gloucester as to become there the subject of local taxation, the petitioner being a corporation organized under the laws of the State of Maine and having its home office at Kittery in that State, and all the vessels in question being enrolled or registered under the federal statutes in the office of the collector of the port of Boston.  The *situs* of those vessels was mainly a question of fact.  *Situs,* which means the place where a thing is, as applied to an object having a physical substance, is ordinarily a fact.  It was at least a mixed question of law and fact.  It is similar to the question of domicil, which usually is a question of fact.  *Perkins* v. *Davis,* 109 Mass. 239. *Palmer* v. *Hampden,* 182 Mass. 511.  *Olivieri* v. *Atkinson,* 168 Mass. 28.  The submission of a case upon agreed facts to be considered as evidence is not necessarily equivalent to the submission of a case upon an agreement as to all the material facts. The "Agreed statement of facts submitted as evidence" in the case at bar does not contain a stipulation as to the *situs* of the vessels.  Therefore it did not cover the whole field necessary to be covered before questions of law alone would arise on the record.  It became the duty of the judge, before he rightly could report the case under the present statute, to make a finding of fact as to the *situs* for taxation purposes of the vessels of the petitioner before the question of law would be presented which he could report under the statute for the determination of this court.  It follows that the report must be discharged and the case stand for further hearing in the Superior Court.  *DeVeer* v. *Pierson,* 222 Mass. 167, 175.

It is, however, apparent that, unless all the evidence stated in the record warrants a finding that the vessels were physically situated in Gloucester in such sense as there to be subject to taxation, the petitioner must prevail as matter of law. The parties have agreed upon all the facts which they desire to submit to the court. The hearing and ultimate decision must be made upon these facts with the rational inferences of which they are susceptible. If as matter of law, upon these facts and the legitimate inferences flowing therefrom, but one conclusion can be reached, it is appropriate that a statement to that effect be made now for the guidance of the Superior Court upon its further hearing. See *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 212 Mass. 257, 260. Considering the case in this aspect, or even regarding it as a case stated under the strict rules applicable to that method of presenting a question of law, (see *Frati* v. *Jannini*, 226 Mass. 430, 432, *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333,) the petitioner is entitled to recover. Since we are of opinion that as matter of law there is not sufficient evidence in the agreed statement of facts, with all rational inferences drawn therefrom in favor of the respondent, to support a finding in its favor, we proceed to discuss the case on its merits.

The pertinent facts in this connection summarily stated are that the petitioner is a corporation organized under the laws of Maine, having its home office at Kittery in that State and having from the date of its organization its general offices, including those of its president, treasurer and directors, in Boston, where its books and records were kept and where most of its bills were paid. It has complied with St. 1903, c. 437, § 60, as to filing certificates and documents permitting foreign corporations to do business within the Commonwealth, and has paid the excise tax levied on foreign corporations under St. 1909, c. 490, Part III, § 56. The vessels here in controversy were all enrolled or registered under the laws of the United States in the office of the collector of the port of Boston. When the petitioner acquired an interest in any vessel registered elsewhere, its enrolment was immediately changed to Boston, two having been thus changed from Gloucester to Boston. All of the vessels were upon the high seas the greater portion of each year, the principal part of the business carried on with the vessels being the catching and supplying of fresh fish

to the Boston market, but at times also to markets of New York, Newport, Norfolk, Portland in Maine, and occasionally, but infrequently, of Gloucester. Most of the vessels sailed on "quarters" or "fifths," being chartered by the captain, who incurred the expense and conducted the business of the voyage, returning to the owner after some deductions one fourth or one fifth of the proceeds of the voyage. This chartering was done chiefly in Boston, although some was done in Gloucester. Some vessels were operated on the halves, the owner retaining control and conducting the business and dividing one half the proceeds, less some deductions, with the crew. The catches of fresh fish made by these latter vessels generally were sold in ports of other States and the salted fish were brought to Boston and occasionally to Gloucester. The corporation had no dock nor wharf nor storehouse in Boston or elsewhere, except in Gloucester, save as for a few days at a time it might hire wharfage for a particular vessel. But it established in 1909 and since has maintained, in the building in which it had its office, a store for the sale of groceries, fishermen's clothing and general supplies for fishing vessels. In 1906 the corporation hired, and in 1909 bought and continuously has used since in Gloucester, a wharf on which are located several buildings including a storehouse, and connected with which is a dock. Some of these buildings have been used occasionally for the curing, storing and sale of fish as they might be brought there on the petitioner's vessels. On this wharf has been maintained a store for the sale of groceries and general fittings and supplies for fishing vessels, and a bookkeeper has been employed regularly in this store. It also employed at this wharf a "shore captain," who had to do with the hiring and discharging of captains of vessels, determining the kind of fishing to be engaged in, and who performed other managerial duties in the absence of some superior officer of the petitioner, but always under the general direction of the president of the corporation in Boston. There was also employed a "boss of the wharf," who looked after the vessels as they arrived, landing and storing what they discharged and shipping what they took. All the vessels went once or more each year to Gloucester for various purposes, including general repairs and additions to and renewals of their fittings, supplies and stock, and for all purposes for which such vessels might resort

to a harbor, lie in dock, or be hauled out on a marine railway. Gloucester was the most convenient and economical port for such purposes and therefore the greater part of all such matters were there carried on, although at times resort was had to other ports for these purposes.

Tangible personal property is deemed for many purposes to have its *situs* at the domicil of its owner. But generally the power of the several States of the Union under the Federal Constitution to levy taxation upon such property is held to rest upon its actual physical situation or keeping for use within the jurisdiction of the taxing State. *Scollard* v. *American Felt Co.* 194 Mass. 127, 129. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194. *Delaware, Lackawanna & Western Railroad* v. *Pennsylvania,* 198 U. S. 341. *Selliger* v. *Kentucky,* 213 U. S. 200, 204. The rule is different as to an absolute sovereign, such as is the United States, which may levy a tax upon property of its citizens not kept upon its territory. *United States* v. *Bennett,* 232 U. S. 299.

Vessels are personal property and taxable as such under our statutes, even though belonging to a non-resident, provided their *situs* is found to be within the city or town levying the tax. *Tobey* v. *Kip,* 214 Mass. 477. See *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385. But they are a peculiar kind of personal property. They are built for navigation and not for remaining stationary. Their value consists in being engaged in navigation, not in being permanently located in a single place. The statutes of the United States require that vessels like these shall have a port of registration. U. S. Rev. Sts. §§ 4141, 4178. 26 U. S. Sts. at Large, c. 250, § 1. 29 U. S. Sts. at Large, c. 67, § 1. The question of *situs* in connection with the taxation of vessels thus registered and engaged in commerce on the high seas and between the several States depends largely upon decisions of the United States Supreme Court as the court of last resort on such a matter. Hence, it is necessary to refer to its decisions.

In *Hays* v. *Pacific Mail Steamship Co.* 17 How. 596, the vessels were registered in New York, where the owner resided. The owner had a naval dock and ship yard in California, where vessels engaged in commerce on the high seas and between ports of the several States resorted for being furnished and repaired, and they spent a considerable time in the ports of that State. But it was,

held that such vessels were not within the jurisdiction of the State of California for purposes of taxation and that their *situs* for that purpose was at their home port of New York. In *Morgan* v. *Parham,* 16 Wall. 471, a vessel owned and having her home port of registration in New York was also enrolled at Mobile in the State of Alabama, where a wharf and office were occupied for her use and whence she had sailed for many years in commerce between the States, without going to New York. She was held not to be subject to taxation in Mobile. In *Ayer & Lord Tie Co.* v. *Kentucky,* 202 U. S. 409, the facts were that vessels owned by an Illinois corporation and plying between places on the Mississippi, Ohio, Tennessee and Cumberland rivers in interstate commerce, were registered and enrolled at Paducah in the State of Kentucky, where also they were kept when not in use. All the earlier cases are reviewed in an exhaustive opinion. It there was said at pages 422, 423: "Quite recently, in *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299, the foregoing authorities [including among others those here cited] were approvingly cited, and were in effect reaffirmed. In that case the vessels were enrolled in New York, the domicil of the owner, but, although engaged in interstate commerce, the vessels were navigated wholly within the limits of the State of Virginia, it was held that they came within the exception to the general rule which we have previously stated, and were properly taxable in Virginia. As in the case at bar, the owner of the vessels was domiciled in Illinois and the vessels were not employed exclusively in commerce between points in the State of Kentucky, but were engaged in traffic between that State and the ports of other States, including Illinois, it seems obvious that, as a question of fact they had no permanent *situs* in the State of Kentucky within the rule announced in the Old Dominion Steamship case." These principles were stated anew and reaffirmed with a full review of previous decisions in *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63, though there applied to different facts not analogous to those here presented. *Yost* v. *Lake Erie Transportation Co.* 50 C. C. A. 511 (112 Fed. Rep. 746) was decided by a court of which Mr. Justice Day and the late Mr. Justice Lurton, then circuit judges, were members, the opinion being delivered by the latter. The facts were that vessels, owned by a Michigan corporation, having as their home

port Monroe and as their port of registration Detroit, both within the State of Michigan, plied in interstate commerce between Toledo in the State of Ohio and ports of other States chiefly on Lake Erie. The majority of the directors and officers resided in Toledo, where also the general manager had his office, where the vessels commonly wintered and where the officers and crews were employed and discharged. It was held after a thorough discussion that the State of Ohio had no jurisdiction for the purpose of taxation.

The principles declared in these cases seem decisive against the validity of the tax assessed upon the vessels of the petitioner here in question by the assessors of the city of Gloucester. The facts in the case at bar are no stronger toward fixing the *situs* of these vessels at Gloucester than were the facts as to *situs* in most of the decisions to which reference has been made. These vessels were not employed exclusively within the territorial waters of Massachusetts, but were engaged in commerce upon the high seas and between different States. The circumstance that they put into the port of Gloucester regularly for repairs and for fitting out, that not being their home port or port of registration, is not enough to fix their *situs* for the purpose of taxation.

The petitioner is entitled as matter of law, under the stipulation of the parties, to an abatement in the sum of $760 with interest from April 18, 1912, at the rate of six per cent per annum, without costs. A decision to this effect is the only conclusion which as matter of law can be reached upon this record.

*Report discharged.*

*Case to stand for further hearing in accordance with this opinion.*