THE WEST BOYLSTON MANUFACTURING COMPANY *vs.*
BOARD OF ASSESSORS OF EASTHAMPTON.

Hampshire.   September 16, 1931. — November 30, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Tax*, List, Assessment, Abatement. *Board of Tax Appeals. Statute*,
Construction. *Supreme Judicial Court. Practice, Civil*, Appeal,
Execution.

Findings of fact by the Board of Tax Appeals in proceedings under c. 58A,
added to the General Laws by St. 1930, c. 416, § 1, are final; and an
appeal to this court under § 13 of said c. 58A, as amended by St. 1931,
c. 218, § 1, from a decision by the board presents only questions of law
raised in such proceedings.

Where the assessors of a town were familiar with the property of a corpo-
ration operating cotton mills in the town and accepted without objec-
tion a list filed by the corporation in good faith and were not misled
thereby, the list was not insufficient in that the manufacturing property
of the corporation was described therein merely as "Machinery, land,
railroad sidings, office and manufacturing buildings, taken at $10.00 per
spindle $1,209,440.00," it appearing that the use of the spindle as a unit
for valuing textile mill properties as a whole including land and build-
ings fairly signified to those acquainted with mill property the size and
capacity of the mill.

The list above described was not insufficient in that some of the mills had
no machinery in them, it appearing that they were a part of a single
manufacturing unit owned by the corporation.

The list above described was not insufficient in that land, on which were
tenement houses used by the corporation to house its employees, was
described by merely being divided into two parts with a statement of
the streets, the numbers of the houses on the several streets and the
number of tenements in the different houses, with a valuation on each
covering land and building, but without showing a definite lot for each
house.

A finding by the Board of Tax Appeals in proceedings under said c. 58A,
that the machinery of the corporation above described in use on April 1
was a certain number of spindles and complementary machinery, was
not controlled by a further finding, at the request of the assessors, that
the corporation was the owner of machinery "used in manufacture"
shown in a certain inventory, which listed every machine in the plant
on April 1, including machinery found to have been acquired for replace-
ment purposes only and not to be a part of the machinery set up and
ready to operate in the mills.

The list above described was not insufficient in the circumstances by reason of inaccuracies or omissions in the description of the real estate or personal property which were made innocently and had not caused any inconvenience to the assessors.

In proceedings for the abatement of a tax, there was no error in considering events coming to pass within a reasonable time after the tax date from causes then operative, so far as they threw light on the valuation on the tax date.

Section 13 of said c. 58A, as amended by St. 1931, c. 218, § 1, largely relates to practice and procedure and therefore applies to cases pending at the time of its enactment.

This court must consider and decide a question as to its jurisdiction although that question has been neither raised nor argued.

Upon an appeal from a decision by the Board of Tax Appeals under said c. 58A, as so amended, this court has jurisdiction in conformity therewith to order execution for the amount of an abatement and costs to issue against the municipality although the municipality is not by name a party to the proceedings, it being represented therein by its assessors.

Upon such an appeal, this court, having found no error of law in the decision by the Board of Tax Appeals, ordered granted an abatement in the sum specified by the board, with interest and costs both before the board and this court, and that, if such total amount were not paid by the treasurer of the municipality within thirty days after the date of the rescript, execution should thereafter issue therefor when a proper certificate of the costs as ordered by the board should be filed with the clerk of the Supreme Judicial Court for the county, such execution to run against the municipality.

COMPLAINT for the abatement of a tax under G. L. c. 59, § 65, filed in the Superior Court on October 18, 1930, against the town of Easthampton.

Subsequently, by order of *Beaudreau, J.*, the case was transferred to the Board of Tax Appeals pursuant to St. 1930, c. 416, § 33, and a petition against the assessors of the town was substituted for the complaint. Material facts found by the Board of Tax Appeals are stated in the opinion. An abatement in the sum of $31,962.52 was granted. The respondents appealed.

*D. A. Foley*, (*J. N. Donais* with him,) for the respondent.
*P. Nichols*, for the petitioner.

RUGG, C.J. This proceeding by way of appeal from refusal by the assessors of Easthampton to abate a tax was begun in the Superior Court under G. L. c. 59, § 65, by complaint against the town of Easthampton by the

owner of the property assessed. See *Welch* v. *Boston*, 211 Mass. 178, 186. Subsequently, pursuant to St. 1930, c. 416, § 33, on motion of the town, the proceeding was transferred to the Board of Tax Appeals. That board was created by c. 58A inserted in the General Laws by § 1 of said c. 416. Thereafter, in conformity to the nomenclature established by said c. 58A, the owner of the property assessed, termed the appellant, filed with the board a substitute petition running against the board of assessors of the town, termed the appellee, setting forth in detail the matters of which it complained. G. L. c. 58A, § 7. See *Thayer Academy* v. *Braintree*, 232 Mass. 402, 406. The decision of the board in favor of the appellant to the extent of granting a considerable abatement was promulgated on June 15, 1931. The appellee appealed on July 3, 1931. Such appeal brings to the court only matters of law raised in proceedings before the board, its decision being final as to findings of fact. No question has been raised touching parties or forms of procedure. G. L. c. 58A, § 13, as amended by St. 1931, c. 218, § 1. Only rulings of law made by the board have been argued.

The sufficiency of the list filed by the appellant was challenged. The facts as found by the board relevant to that question are these: The appellant is a corporation organized under the laws of this Commonwealth. It owned a·cotton mill and machinery, tenement properties, a recreation building and tracts of vacant land in Easthampton. The assessors of the town in 1930, as authorized by law, gave notice requiring persons subject to taxation to bring in a true list of their real and personal estate. In attempted compliance therewith, the appellant filed a list on the prescribed form. It described itself by its corporate name and as "of No. 188 Pleasant St. . . . Easthampton." The only description of the mill properties in the list was "Machinery, land, railroad sidings, office and manufacturing buildings, taken at $10.00 per spindle $1,209,440.00." The board rightly drew the inference from these statements of the list that the appellant owned a mill of 120,944 spindles, and that the mill was situated at 188 Pleasant Street. It

further found that the spindle is frequently used as a unit of measure for valuing not only textile machinery but textile mill properties as a whole including land and buildings; that it is one of the ordinary ways of describing a mill and machinery and fairly signifies to those acquainted with mills and mill property the size and capacity of the mill; that it was used in this sense by the appellant in making up its list. There was testimony to that effect. Even if, as argued by the appellee, this testimony in parts was somewhat inconsistent or shaken on cross-examination, its weight was for the board and it was sufficient to support the finding. *Gold* v. *Spector,* 247 Mass. 110–111, and cases cited. *McCrillis* v. *L. Q. White Shoe Co.* 264 Mass. 32, 34. *Commonwealth* v. *Whitcomb, ante,* 27.

As bearing on the sufficiency of the list, further facts were found to this effect: In 1929, the appellant filed a list which set out under the heading, "Real Estate," "Land, mill buildings, tenements, etc., as per list on file in your office." Similar reference to list on file in the assessors' office was made in 1928. In addition to the usual books and plans, the assessors had a system of cards on which were listed the mill buildings and other structures and the area of the land in the mill yard. The assessors had been over the buildings frequently, had been furnished with detailed information of their dimensions and character, and knew that 188 Pleasant Street was the location of the appellant's main office in the mill yard. In a letter sent to the assessors in 1930 with the list, attention was directed to the fact that the list was made on the basis of $10 per spindle as a value for machinery, land, railroad sidings, office and manufacturing buildings, and that this was a prevalent method of valuing similar plants in the eastern part of the Commonwealth. The list was filed without intention to mislead. It was accepted by the assessors without objection on the ground of insufficiency, was received and accepted as a true list of the appellant's taxable property, and conveyed to the assessors a reasonable understanding of the nature and extent of that property. The conclusion of the board respecting this part of the list is

in these words: "The description of the appellant's land, buildings and machinery constituting its mill, in the list which it filed, was not given in comprehensive detail. Nevertheless the location was indicated and land, buildings and machinery were referred to by a customary unit of measure. Moreover the properties were well known to the assessors, they asked for no further description, and the list was filed in good faith."

The findings as to the character and extent of the mill properties of the appellant were in these words: "On April 1, 1930, the mill properties owned by the appellant consisted of six mills, eight storehouses, two office buildings, a picker house, boiler house, engine house, two transformer houses, a pump house and some smaller buildings, all located on an elongated tract of land containing about seventeen acres, on the northerly side of the mill pond between the pond and Pleasant Street. The pond was about forty-three acres in area. Two railroad tracks, one belonging to the New York, New Haven & Hartford Railroad and the other to the Boston and Maine Railroad, ran the length of the land near the shore of the pond, and sidings led from the tracks to the mills. The original Mill (number 2), two storehouses, picker house and pump house were between the tracks and the pond; the other buildings were on the other side of the tracks, between them and Pleasant Street. The main office building was at the easterly end of the lot and the mills as they were erected were numbered consecutively 1, 3, 4, 5 and 6, extending in the westerly direction. Mill number 2 was connected by a bridge across the tracks with Mill number 3, and the other mills and storehouses were either contiguous to each other or connected by bridges or tunnels . . . . The plant had a capacity, when fully equipped, of about 137,000 spindles. On April 1, 1930, Mill number 2 had no machinery in it, Mill number 3 practically none, and some of the floors in the other mills also were empty or partially filled. The mills were operated on purchased power with motor drives, the power plant having been abandoned. The boiler plant furnished steam and hot water for heating and manufac-

turing purposes. Water for washing, for the boilers and for fire protection was drawn from the mill pond and supplied through the pump house . . . . On April 1, 1930, the condition in the cotton manufacturing industry in Massachusetts, particularly among mills making the coarser goods, was much depressed, and the chance was slight for any independent tire fabric factory to continue to do business successfully. The appellant was then the last survivor of the independent tire fabric manufacturers in Massachusetts, and was operating 67,000 spindles, but not at a profit or with any reasonable possibility of making a profit. It has since ceased to do business, closed down on March 28, 1931, and is now in process of liquidation. It has not been able to sell or rent any portion of its plant, has started to tear down Mill number 2, and has sold and junked some of its machinery. The town of Easthampton is not a manufacturing or industrial centre, and its largest factory was that of the West Boylston Manufacturing Company."

The list also referred to land, tenements and recreation building as per memorandum attached. Therein the tenement houses were grouped into two main villages and described by streets, numbers of the houses on the several streets and number of tenements in the different houses. A valuation was placed on each, covering land and building. Several other parcels of unoccupied land were described by name, though generally without giving the area, and in no instance were the metes and bounds given. The recreation building was listed by itself. The facts found touching this were that these tenement properties were used to house the operatives of the appellant and that the land on which the buildings stood was not divided into house lots, no plan was ever made of the tracts, the streets were private ways, and that it could not be determined what lots went with the tenement houses listed.

There appears to have been controversy at the hearing as to the character, amount and condition of the machinery in the mills. The appellee contended that on the tax date there were in use 120,944 spindles with complementary machinery, as listed by the appellant, and that there was

also surplus machinery. The findings are that there were spinning frames carrying that number of spindles, but that of these a substantial number had been acquired in 1929, were used for the purpose of replacement only, and were not a part of the machinery set up and ready to operate in the mills. There were, in addition to spinning frames, large quantities of preparatory, weaving and finishing machinery used' in processes which precede and follow spinning. Much of this machinery was obsolete and a considerable amount was afterwards broken up for junk. On this matter the board found in conclusion "that the machinery in use on April 1, 1930, was 105,248 spindles and complementary machinery. That was the number on the basis of which the tax on the appellant's personal estate was assessed."

Although the question is close, we are of opinion that the list as filed was a sufficient compliance with the statutory requirement and conformed to the conditions established as prerequisite to an abatement. G. L. c. 59, §§ 64, 65. The filing of an adequate list is a condition precedent to the allowance of an abatement. There is no hard and fast definition of that kind of a list. It must be an enumeration, description and other particularization of the property in sufficient detail to convey to the assessors, presumed in general to be familiar with the outstanding features of their respective municipalities, a reasonable understanding of the extent and nature of the subject to which it relates. *Boston Rubber Shoe Co.* v. *Malden,* 216 Mass. 508, 510, and cases reviewed. *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, 450. The use of the spindle, as the unit of valuation of properties devoted to the manufacture of cotton, to include not only the buildings and machinery but also the land reasonably connected with the same, is justified in principle by the decision in *Troy Cotton & Woolen Manufactory* v. *Fall River,* 167 Mass. 517. It there was held in substance that, where the word spindles was used as a unit of measure of the productive power of a mill, so that it fairly signified to those acquainted with mills and mill property the size and capacity of the mill, then the use of

that word in a list to the assessors was a compliance with the statutory requirement as to both building and machinery. To the same effect is *Tremont & Suffolk Mills* v. *Lowell*, 271 Mass. 1. It is but a slight and not unwarranted extension of that principle to hold, where the word spindles is used' by those having knowledge of the business of manufacturing cotton to signify not only the buildings and machinery but also the land reasonably devoted to the same end in combination with the buildings and machinery, that its use in a list satisfies the statute. Land is as essential for the profitable use of machinery in the manufacture of cotton as are buildings. There is no legal bar to accepting commercial usage in the interpretation of the words of a statute. There is no rigid inhibition against accepting a standard of measure such as spindle to describe a manufacturing plant where land, buildings and machinery are bound into a single entity directed to one end, provided the customs of those engaged in that branch of production have adopted it. The doctrine laid down in the two cases last cited is as applicable to the facts disclosed on the present record as it was to the facts there under consideration.

It is argued that Mills numbers 2 and 3 cannot be included in this unit of value because there was no machinery in them. But it is apparent that those buildings were a part of the single manufacturing unit owned by the appellant. They were not devoted to any other use. From the findings as a whole it is manifest that in fact they were not available for any valuable use except as a part of the cotton mill of the appellant. The circumstance that they happened on the tax date to be unoccupied does not invalidate the list. It is to be remembered that the assessors were perfectly familiar with the property in question, and that they received the list without objection and obviously were not misled in any essential particular. *Great Barrington* v. *County Commissioners*, 112 Mass. 218, 223.

The failure to separate in the list the two tracts of land into lots on which stood the two groups of tenement houses, so as to show a definite lot for each house, did not invalidate the list. The tenement property was used by the appellant

to house its employees.   It was a part of the property given over to its corporate uses.   For aught that appears, this was its most valuable use.   Entire tracts of land were devoted to this purpose.   Whatever might have been the situation if the assessors had objected to the list on this ground, it was received without comment and used by them as the basis of valuation.   They were familiar with the property and were not misled.   *Charlestown* v. *County Commissioners,* 1 Allen, 199.   The case on this point is distinguishable from *Pingree* v. *County Commissioners,* 102 Mass. 76.

The board granted the appellee's request for finding of fact that the appellant was the owner of textile machinery used in manufacture, shown in an inventory prepared for the trial which listed every machine in the plant on the tax date.   This inventory apparently disclosed machinery not in operation but owned and available for replacement. "Used in manufacture" in this connection perhaps means either actually employed in producing goods or susceptible of being so employed if needed for replacements or substitutes and thus indirectly used in manufacture.   However that may be, the granting of this request, although somewhat confusing, cannot fairly be interpreted as overruling the explicit finding that the machinery in use on the tax date was 105,248 spindles and complementary machinery. That finding must be regarded as the numerically certain and final conclusion of the board.   Thus construed, there is nothing inconsistent in the rulings and findings of the board with *Hamilton Manuf. Co.* v. *Lowell,* 274 Mass. 477.   That decision also shows that the appellant was not estopped by its list from proving the truth respecting the number of its spindles in place for use in operation.

Inaccuracies or omissions in the list in the description of the real estate or personal property, in view of other facts found, are not of sufficient importance to bar the granting of the abatement.   They were made innocently and have not caused any inconvenience to the assessors.   *Wright* v. *Lowell,* 166 Mass. 298.   *Blackstone Manuf. Co.* v. *Blackstone,* 200 Mass. 82, 93.

There was no reversible error in considering events coming to pass within a reasonable time after the tax date from causes then operative, so far as they threw light on the valuation of April 1, 1930. *Attorney General* v. *Stone,* 209 Mass. 186, 190, and cases collected.

It is not necessary to go through the various requests for findings and rulings which were granted and denied. The board seems from the record to have had fully in mind the governing statutes and the controlling principles of law as set forth in adjudicated decisions. All the points argued have been carefully considered. No further discussion in detail is required. No error of law is disclosed affecting the validity of the decision of the board for the appellant and the granting of the abatement in the amount specified.

It is alleged in the petition and admitted by the answer that the appellant paid the tax assessed on October 17, 1930. Therefore the appellant is entitled to interest at the rate of six per cent per annum from that date on the amount for which abatement is ordered. G. L. c. 58A, § 13, as amended by St. 1931, c. 218, § 1.

It is provided by G. L. c. 58A, § 13, as amended by St. 1931, c. 218, § 1, that this court in deciding an appeal of this kind may make such order as its determination may require, and that, if abatement is granted and costs awarded, "execution therefor may issue against the town as in actions at law." This section in large part relates to practice and procedure and therefore applies to the case at bar, although it was pending at the time the statute was enacted. It does not affect substantive rights. *Devine's Case,* 236 Mass. 588, 594, and cases collected. *Hollingsworth & Vose Co.* v. *Recorder of the Land Court,* 262 Mass. 45. It is to be observed that the town is not by name a party to this proceeding. The board of assessors of the town was the appellee before the Board of Tax Appeals and is named as the party in this proceeding. The question whether the court has jurisdiction to order an execution in conformity to the statute thus must be considered and decided although not raised or argued. *Eaton* v. *Eaton,*

233 Mass. 351, 364. *Attorney General* v. *Pelletier*, 240 Mass. 264, 299. It is elementary that in the ordinary case the court cannot issue execution against one not a party to the proceedings. Manifestly the Board of Tax Appeals is not a court and cannot enforce its orders by issuing an execution. That can be done only by a court. *Opinion of the Justices*, 209 Mass. 607, 611, 612. *Johnson's Case*, 242 Mass. 489, 493, 494. Under earlier statutes there was no requirement for service of a complaint for the abatement of taxes on the town because it was "assumed, apparently, that the knowledge of the assessors as officers of the town will sufficiently protect the interests of the inhabitants." *Cheney* v. *Dover*, 205 Mass. 501, 503. Towns are public instrumentalities established for the public welfare and subject to large control by the Legislature. The duties of the officers of towns and the distribution of municipal powers between different boards are under the legislative direction. The method of levying taxes and providing in proper cases for abatements is a sovereign power. It is vested in the General Court. It is within legislative competency to provide that the board of assessors shall in proceedings for the abatement of taxes represent the municipality and that judgment rendered for repayment of taxes collected but not justly due shall be paid by the municipality even though the municipality is not by name a party to the proceeding. The board of assessors may be designated by statute to act in behalf and in place of the municipality in proceedings like the present. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583, 585. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42. We are, therefore, of opinion that the court has jurisdiction to order execution to issue against the town even though it is not by name a party to this proceeding.

The order is that the abatement be granted to the appellant in the sum of $31,962.52; that this sum bear interest at the rate of six per cent per annum from October 17, 1930; that the appellant recover its costs before the board and the costs of this appeal, and that, if the total of these

amounts is not paid by the town treasurer of the town of Easthampton within thirty days after the date of the rescript in this case, execution may thereafter issue therefor when proper certificate of the costs as ordered by the board is filed with the clerk of the Supreme Judicial Court for our county of Hampshire, such execution to run against the town of Easthampton.

*So ordered.*