### ASSESSORS OF FRAMINGHAM *vs.* FIRST PARISH IN FRAMINGHAM.

Suffolk.    April 9, 1952. — July 7, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Taxation*, Real estate tax: exemption; Religious organization. *Value.*

Findings by the Appellate Tax Board showing the assessed value of a building owned by a parish adjacent to its church, a dominant use of rooms in such building by the Sunday school and other parish organizations for religious purposes, and occasional and incidental uses of the rooms for nonreligious purposes justified a conclusion by the board that "a portion" of the building having a stated value was devoted to religious purposes and required a partial abatement of tax proportionate to the stated value of that portion under G. L. (Ter. Ed.) c. 59, § 5, Eleventh, as appearing in St. 1938, c. 317.

APPEAL from a decision by the Appellate Tax Board.

In this court the case was submitted on briefs.

*Anthony DiCicco, Jr.,* for the assessors.

*Horace Guild,* for the taxpayer.

WILLIAMS, J.   This is an appeal by the assessors of Framingham from a decision of the Appellate Tax Board granting a partial abatement, to the amount of $189.20, of a tax of $277.20 assessed on the real estate of the taxpayer in the town of Framingham for the year 1950. The case was submitted to the board on a statement of agreed facts, which facts were adopted by the board as its findings. It appears that the taxpayer, First Parish in Framingham, is a religious organization. On January 1, 1950, it owned a parcel

of land with a building thereon at 24 Vernon Street, Framingham, adjacent to other land owned by it on which its church was situated. There are seven rooms in the rear of the building at 24 Vernon Street which are used as a parsonage for the minister of the church. The other rooms on the first floor of the building are the minister's study, used by the minister "practically daily" in performing his ministerial functions; an assembly room, used by the Sunday school as a whole each Sunday; a hallway with a coat room and toilet rooms for men and women; Women's Alliance room used by the Women's Alliance at its meetings twice a month and as a Sunday school class room each week; a dining room used as such for church suppers and as a Sunday school class room each week; and a kitchen, used for the preparation and serving of food for church suppers, for meetings of the Women's Alliance, and for meetings of the Men's Club of the church. On the second floor there are four rooms, one used each week by the kindergarten group of the Sunday school, another used by parents attending church services for the purpose of leaving their children too young for the kindergarten in charge of a "sitter," and two other rooms used each week as Sunday school class rooms.

The rooms so described, other than the minister's study and the seven rooms in the rear of the building, were at different times during the year 1950 used for the following purposes: "On October 12, 1950, the rooms were used for an auction sale of personal property donated to the Parish for the purpose of being sold to raise money for the Parish. On other dates in that year card parties were held to raise money for the Parish. In April, August and September of 1950 use of the rooms was permitted to individuals for the purpose of holding a wedding reception in each instance. In September and October use of the rooms was permitted to 'The Villagers,' a social organization to which some members of the Parish belong." At times in October, November, and December the Framingham Historical and Natural History Society, the Framingham Garden Club, the American Veterans Committee, the United World Federalists, and the

Town Library Committee were permitted to use the rooms. "In December the use of the rooms was allowed to the Parent-Teachers Association of the Jonathan Maynard School for a Tea in honor of the retiring principal of the said school. No bills were rendered and no charge was made on the books of the Parish for such use. Those organizations and individuals who were permitted to use the rooms as enumerated above did make contributions to the Parish, the total of which was $170. In addition to the foregoing, the following were permitted to use those rooms for meetings; Framingham Chapter American Red Cross; Girl Scouts, Brownies; Boy Scouts, Cubs; Framingham Choral Society; Inter-Church Young Adult Fellowship; Massachusetts Society for Prevention of Cruelty to Children; no one of which last-named group made any contribution of any sort to the Parish for such permission and use, nor did they in any way pay therefor."

"The property was valued by the assessors of the town of Framingham at $1,300 for the land and $10,000 for the building, making a total of $11,300. An exemption of $5,000 was granted under c. 59, § 5, cl. 11, of the General Laws on the building as a parsonage, and a tax was assessed to the Parish on $6,300 valuation, at the rate of $44 per thousand, in the amount of $277.20, which tax was paid prior to November 1, 1950."

The board found "that a portion of the real estate in question (not including the parsonage) is appropriated for religious worship and instruction in conjunction with the adjacent church of the . . . [taxpayer] . . . that the value of the real estate appropriated to such uses is $4,300 . . . [and that the taxpayer is] entitled to an abatement in the amount of $4,300." The contentions of the assessors on their appeal are that the board was not warranted in finding that the portions of the real estate referred to in its findings were appropriated for religious worship and instruction in conjunction with the adjacent church of the taxpayer and that the value of the real estate so appropriated was $4,300. Other contentions as to the correctness of certain rulings of

law made by the board have not been argued and are therefore considered waived. *Assessors of Lawrence* v. *Arlington Mills,* 320 Mass. 272, 275.

The statute pertaining to the exemption which the taxpayer here claims is G. L. (Ter. Ed.) c. 59, § 5, as amended by St. 1938, c. 317, which provides that "The following property and polls shall be exempt from taxation: . . . Eleventh, Houses of religious worship owned by, or held in trust for the use of, any religious organization . . . and, to an amount not exceeding five thousand dollars for each parsonage, parsonages so owned or held; but such exemption shall not, except as herein provided, extend to any portion of any such house of religious worship appropriated for purposes other than religious worship or instruction."

The "burden of proof is upon the one claiming an exemption from taxation to show clearly and unequivocally that he comes within the terms of the exemption." *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 257. *American Institute for Economic Research* v. *Assessors of Great Barrington,* 324 Mass. 509, 512.

As the subsidiary findings are undisputed, the questions for decision are whether the conclusions of the board are consistent with these findings and are warranted as matter of law.

The parish building, although physically separate from the church, is maintained as a place for activities which normally accompany and supplement the religious work of a parish and which frequently are housed in the vestry of the parish church. See *South Congregational Meeting House in Lowell* v. *Lowell,* 1 Met. 538. The Sunday school is devoted to religious instruction. The Women's Alliance and the Men's Club are subsidiary organizations common to religious societies of all denominations, ordinarily established to promote and aid religious objectives. It is clear that the board was warranted in finding that the portion of the real estate used by them is "appropriated for religious worship and instruction in conjunction with the adjacent church." The occasional use of the rooms by various secular organiza-

tions which does not appear to have interfered with their regular use for religious purposes does not, we think, constitute an appropriation for other purposes. In the following cases cited by the assessors, *South Congregational Meeting House in Lowell* v. *Lowell*, 1 Met. 538, where stores underneath the church were rented; *Trustees of the Chapel of the Good Shepherd* v. *Boston*, 120 Mass. 212, where rooms were let to tenants; and *William T. Stead Memorial Center of New York* v. *Wareham*, 299 Mass. 235, where rooms were wholly occupied as lodgings, the nonreligious use was permanent and exclusive. In the instant case the occasional use was incidental to the continued and regular occupation of the rooms for religious purposes. The right of exemption from taxation, which depends on the dominant purpose for which the rooms are maintained and their actual use for that purpose, was therefore not affected. *Emerson* v. *Milton Academy*, 185 Mass. 414, 415. *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383.

The board has considered the land and building as a whole and has found that, apart from the exemption for the parsonage, a further exemption should be granted amounting to $4,300. The board was not required to specify the particular portion of the premises it had in mind in arriving at this conclusion. It is sufficient that it could have found that a portion of the premises, exclusive of the parsonage, was primarily devoted to religious purposes and was of the value of $4,300. The problem of determining value is like that of appraising damage. It seldom can be proved with the exactness of mathematical demonstration but must be left to estimate and judgment. *Piper* v. *Childs*, 290 Mass. 560, 563. The comprehensive description of the rooms and the uses to which they were put, combined with the evidence of the assessed value of the entire building, was sufficient to warrant a finding of the value of the exempted portion. In our opinion there was no error of law in the conclusions of the board.

Abatement is granted in the sum of $189.20, and the treasurer of the town of Framingham is ordered to pay to

the taxpayer said amount with interest at four per cent per annum from the date of payment of said tax, together with the costs of the appeal. G. L. (Ter. Ed.) c. 58A, § 13; c. 59, '§ 64, both as amended.

*So ordered.*