ASSESSORS OF SHEFFIELD *vs.* J. F. WHITE
CONTRACTING CO.

Berkshire.    September 20, 1955. — December 6, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Taxation,* Personal property tax: machinery, place of taxing.    *Words,*
"Situated."

Contractor's machinery used by a domestic business corporation in the
conduct of its business and physically present in a town on January 1,
the tax day, was not "situated" in that town within the meaning of
G. L. (Ter. Ed.) c. 59, § 18, Second, as appearing in St. 1936, c. 362,
§ 2, so as to be taxable by that town where it appeared that the ma-
chinery had been brought into it only for temporary use in the con-
struction of a bridge and had not been there more than nine months on
the tax day and was removed from the town shortly thereafter.

APPEAL from a decision by the Appellate Tax Board.

*Sidney Q. Curtiss,* Town Counsel, for the assessors of
Sheffield.

*Robert J. Owens,* for the taxpayer, submitted a brief.

WILLIAMS, J.  This is an appeal by the board of assessors
of the town of Sheffield from a decision of the Appellate Tax
Board granting abatement of a tax assessed to the taxpayer
on personal property in that town under the provisions of
G. L. (Ter. Ed.) c. 59, § 18, Second, as appearing in St.
1936, c. 362, § 2.  The statute authorizes the assessment of
a tax on machinery used in the conduct of the business of a
domestic business corporation "where such machinery . . .
is situated to the owner or any person having possession of
the same on January first."  The taxpayer is a domestic
business corporation having its usual place of business in
Cambridge.  On January 1, 1953, it had in its possession in
the town of Sheffield seven items of contractor's machinery
having a fair cash value of $34,500 on which it was assessed
a tax of $1,311 for the year 1953.  A petition for abatement

was denied by the assessors and an appeal taken by the taxpayer to the Appellate Tax Board.

The board found that in April, 1952, the taxpayer began the construction of a covered wooden bridge in Sheffield and to perform the work brought to the town at various times the items of machinery on which the tax was imposed. "Whenever the use of any of the equipment was required, the particular piece was brought into Sheffield, put into operation on the job and when the operation was completed, it was removed." The times at which the different machines arrived and left were as follows: "1. Koehring — 605 — Crane   Arrived:   April 23, 1952   Left:   February 6, 1953   2. Dozer TD–24 #23 Arrived: December 19, 1952   Left:   January 8, 1953   3. Dozer TD–24 #21   Arrived: December 12, 1952   Left: January 13, 1953   4. LaPlante Choate — TS–300 — Scraper   Arrived: April 18, 1952   Left: September 26, 1952   Arrived: December 18, 1952   Left: January 8, 1953   5. LaPlante Choate — TS–300 Scraper   1952 — TBU 300–757   Arrived: April 18, 1952   Left: September 26, 1952   Arrived: December 18, 1952   Left: January 8, 1953   6. Ingersoll Compressor — 600 cf.   Arrived:   April 30, 1952   Left: January 12, 1953   7. Caterpillar Motor Grader   Arrived: December 23, 1952   Left: January 2, 1953." The board stated that it "finds as a fact that the . . . [taxpayer] brought this equipment to Sheffield solely for use on the construction of the bridge and its approaches and at no time intended to use, store or garage it in Sheffield after the accomplishment of this purpose; [and that] in so far as it is a question of fact . . . [it] finds that the property in question was not 'situated' in the town of Sheffield on January 1, 1953, within the meaning of G. L. (Ter. Ed.) c. 59, § 18, Second." The board granted an abatement of the tax with interest to the taxpayer.

Thirteen errors of law are assigned in the assessors' claim of appeal. As there is no report of the evidence assignments 1 and 2 which relate to the admissibility and probative value of certain evidence require no consideration. Assign-

ment 3 is based on the denial of the assessors' request to rule that "Personal property, including machinery, may, for tax purposes if the nature of it or facts require it, have a situs at more than one place." Whether the machinery might have also had a situs in a place other than Sheffield was not material. The general question raised by the other assignments of error is whether on the subsidiary facts found by the board there was error in law in its ultimate finding that on January 1, 1953, the machinery was not "situated" in Sheffield. Its decision of course is final as to the facts. See *Fisher School* v. *Assessors of Boston,* 325 Mass. 529, 533; *Assessors of Framingham* v. *First Parish in Framingham,* 329 Mass. 212, 215.

The term "situated," as used in the statute, has, we think, the same meaning as "situs," a term which perhaps is used more frequently in tax statutes. "Situs . . . means the place where a thing is, as applied to an object having a physical substance," and its determination ordinarily requires a finding of fact. *Atlantic Maritime Co.* v. *Gloucester,* 228 Mass. 519, 523. Property cannot be said to be situated in a place merely because it is temporarily in use there on the tax day. *Ingram* v. *Cowles,* 150 Mass. 155, 157. To have a situs or to be situated implies "some degree of permanence of location" and "temporary lodgment or migratory presence . . . is not enough." *Carlos Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 445, 448. We are aware of no general rule by which the degree of permanence of location sufficient in the case of personal property to justify the assessment of a tax upon it may be determined. In *Ingram* v. *Cowles,* 150 Mass. 155, a portable sawmill of a nonresident which had been in the town of Leverett for approximately two months before the tax day and for the same length of time thereafter was held not to be taxable by Leverett. In *Tobey* v. *Kip,* 214 Mass. 477, a yacht kept for an entire year in Falmouth also by a nonresident was deemed taxable by the town. In *Pierce* v. *Eddy,* 152 Mass. 994, horses which were kept throughout the year in a town where the owner did not live were considered to be there taxable.

Little assistance is obtained from examination of the many and conflicting decisions in other jurisdictions. They depend on the interpretation of different statutes and the application of such statutes to special circumstances. Plainly the purpose for which the property is within the taxing jurisdiction is of primary materiality, as would be the intent of a person as to his residence on an issue of domicil. *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519, 523. *Kelley* v. *Rhoads*, 188 U. S. 1. The length of time the property remains in place before the tax day and its disposal within a reasonable time after that day are also to be considered. *Attorney General* v. *Stone*, 209 Mass. 186, 190, and cases cited. See *West Boylston Manuf. Co.* v. *Assessors of Easthampton*, 277 Mass. 180, 189; *Ingram* v. *Cowles*, 150 Mass. 155; *National Dredging Co.* v. *State*, 99 Ala. 462.

From the findings of the board it appears that the machinery was in Sheffield for only temporary use and for an indefinite time. On January 1, 1953, the tax day, no machine had been in the town for over nine months. All machines were removed shortly thereafter. "It is a general principle of the law of taxation that personal property is taxable at the domicil of the owner unless it has acquired a permanent situs in some other taxing jurisdiction." *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 445, 449. We think the board was warranted in finding that no such situs had been acquired in Sheffield.

The tax is abated in accordance with the decision of the Appellate Tax Board with costs of the appeal.

*So ordered.*