BOARD OF ASSESSORS OF BOSTON *vs*. FLYING TIGER LINE INC.
& another [1]

Suffolk. December 5, 1988. — March 15, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Taxation*, Personal property tax: machinery, aircraft. *Aircraft*, Taxation. *Words*, "Situated."

On appeal by a city's board of assessors from a decision of the Appellate Tax Board (board) concluding that the city did not have statutory authority to levy and collect a personal property tax on aircraft and aircraft engines owned or leased by two corporations engaged in interstate commerce, there was no merit to the assessors' claims that the question whether the city had such authority was not presented to the board and that, therefore, the board exceeded its authority in deciding that issue. [361]

In a proceeding before the Appellate Tax Board to determine whether, based on a stipulation of facts, a city had the statutory authority during the fiscal years in question to levy and collect a personal property tax on certain property used in business, substantial evidence on which the board could properly decide the statutory question was provided by the stipulation of facts. [361]

Aircraft owned or leased by two corporations in the course of their business of transporting cargo and passengers in interstate commerce, which were in the city of Boston regularly but briefly from time to time, did not have a sufficient degree of permanence of location to be "situated" in the city within the meaning of G. L. c. 59, § 18, Second, and thus the city did not have the authority during the fiscal years in question to levy and collect a personal property tax on the aircraft and their engines. [362-364]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted a request for direct appellate review.

*David L. Klebanoff* (*Michael Eby* with him) for the Board of Assessors of Boston.

[1] New York Airlines, Inc.

*George T. Finnegan (David J. Kerman* with him) for Flying Tiger Line Inc. & another.

*Marjorie S. Cooke & John C. Englander,* for American Air Lines, Inc., & others, amici curiae, submitted a brief.

WILKINS, J. The board of assessors (assessors) appeals from a decision of the Appellate Tax Board (board) ruling that the city of Boston did not have statutory authority to levy and collect a personal property tax on airframes and aircraft engines owned or leased by Flying Tiger Line Inc. and by New York Airlines, Inc. (airlines), and used in interstate commerce.[2] The board abated the personal property taxes assessed on the aircraft as of January 1, 1982, 1983, and 1984.

The board heard the airlines' appeals on a joint stipulation of fact and on a statement of the issues. The only stipulated issue we need deal with is: "Did the City of Boston have the authority during fiscal years 1983, 1984 and 1985 to levy and collect a personal property tax on the aircraft and aircraft engines owned or leased by the appellants and operated in interstate commerce?" We agree with the board that the answer to the question is "No." Aircraft using Logan International Airport (Logan) in the course of the airlines' business are not subject to local taxation because the aircraft are not "situated" in Boston within the meaning of the word in G. L. c. 59, § 18, Second (1986 ed.).

Flying Tiger Line Inc., a Delaware corporation, is primarily engaged in the common carriage of freight and mail, using a fleet of approximately thirty cargo planes. It serves major cities in this country and abroad. Its operations at Logan involve the arrival and departure of aircraft and associated loading and unloading of cargo. New York Airlines, Inc., also a Delaware corporation, is engaged in the interstate transportation of passengers by air. It operates a fleet of approximately twenty-three passenger planes in seven States. At Logan it loads and unloads passengers and services, cleans, and caters its aircraft.

To arrive at a value of the aircraft to be subjected to local personal property tax assessments, the assessors measured the

---

[2] We shall refer to such property collectively as the aircraft.

ground time of aircraft at Logan and allocated the mean depreciated original cost of the aircraft of the airlines accordingly. The details of the process are not important to our decision. The assessors made no attempt to ascertain the physical presence of particular airframes or engines at Logan on January 1 of 1982, 1983, or 1984. The depreciated cost of particular airframes differs widely. Different airframe types use different types of engines, and, in most instances, engines may be removed and substituted between airframes of the same type.

The assessors first claim that the question whether the city had statutory authority to assess the aircraft was not presented to the board and, therefore, the board exceeded its authority in deciding that issue. The parties stipulated that one issue before the board was whether the city had authority to levy and collect a personal property tax on aircraft owned or leased by the two airlines and operated in interstate commerce. We cannot fathom how that stipulation could fairly be read to exclude consideration of the question whether the Legislature had authorized the city to assess a tax on the aircraft involved in this case. The assessors' argument lacks merit.

The assessors' next claim is that the board's findings were not supported by substantial evidence. This argument is misdirected. The case was submitted to the board and decided by it on a stipulation of facts. The issues for the board were ones of law. The board appropriately passed on the city's authority to tax the aircraft on the facts submitted. As to the issue on which we decide this case, the board's task was to decide, in light of the stipulated facts (e.g., the comings and goings of the aircraft) and in light of the meaning of the word "situated" in the taxing statute, whether the aircraft were situated in Boston so as to be subject to local taxation. The stipulation of facts provided substantial evidence on which the board could properly decide that statutory question.[3]

---

[3] The assessors provide no suggestion as to what facts bearing on this issue were omitted from the stipulation of facts. The airlines argued the absence of statutory authority in their "trial" brief, but the assessors filed no reply brief in opposition and did not otherwise object that the board should not consider the issue. When the board's decision was released, the

Before we discuss the question of the assessors' statutory authority to tax the aircraft, we want to make clear that this appeal does not involve the question whether it would be permissible under the Constitution of the United States to impose a local personal property tax on that aircraft. We assume that a properly focused statute authorizing such a tax would meet the requirements both of due process (*Braniff Airways, Inc.* v. *Nebraska State Bd. of Equalization & Assessment*, 347 U.S. 590, 600-601 [1954]), and of the commerce clause (*Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279 [1977]). The board's decision did not depend, as the assessors argue, on a belief that to subject the aircraft to a local property tax would violate Federal constitutional rights of the airlines.

We reject the assessors' suggestion that we should attribute to the word "situated" in our tax statutes the broadest definition possible consistent with the views of the Supreme Court of the United States, from time to time, of what personal property a State may subject to local taxation. The assessors and the board for different reasons have relied on *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519, 526 (1917). There we regarded opinions of the Supreme Court of the United States as controlling on the question of situs so as to bar Gloucester from taxing certain fishing vessels whose home ports were elsewhere. In the *Atlantic Maritime* opinion, we did not consider what the Legislature intended by its use of the word "situated" in a statute authorizing local taxation of personal property.

We view the *Atlantic Maritime* case as uninstructive on the issue before us. The board thought the *Atlantic Maritime* case was determinative of the situs question in this case because this court ruled that a fishing vessel, whose home port was not Gloucester, could not be taxed there. The principles on which this court relied in the *Atlantic Maritime* case have been superseded by views expressed in later Supreme Court opinions. See *Braniff Airways, Inc.* v. *Nebraska State Bd. of Equalization & Assessment, supra* at 600-601. Thus the *Atlantic*

---

assessors did not file a request with the board that they be relieved from their stipulations on the ground of surprise.

*Maritime* opinion does not answer the situs (or "situated") question for the purposes of this case, as the board thought. On the other hand, as we have said, we reject the assessors' argument that the meaning of "situated" for local tax purposes ebbs and flows with the changes of view on constitutional or other principles expressed from time to time by the Supreme Court of the United States.[4]

The Supreme Court's views under the Constitution of the United States control what a State may not tax locally but do not control what is to be taxed. That certain property may be taxed within constitutional limits does not tell us that it is "situated" in the Commonwealth or in Boston within the meaning of our tax statutes.

The board reached the correct conclusion when it decided that the aircraft were not taxable by Boston because they were not "situated" in Boston within the meaning of that word in G. L. c. 59, § 18, Second.[5] The board ruled, and it is agreed, that the aircraft are "machinery used in the conduct of the business" of the airlines. General Laws c. 59, § 18, Second, states that such property should be assessed where it "is situated to the owner or any person having possession of the same on January first." It should be understood, consistent with the tax law's affection for the metaphysical, that machinery used in the conduct of a business may be present in place but yet not

---

[4] We, therefore, do not follow the view of an intermediate appellate court in California that the word "situated" in the governing statute "means having such contacts as confer jurisdiction to tax." *Zantop Air Transp.* v. *County of San Bernardino*, 246 Cal. App. 2d 433, 437-438 (1966).

[5] We do not indorse all the board's reasoning. The board erred in concluding that personal property of a foreign corporation is unaffected by G. L. c. 59, § 2. Section 2 states that "[a]ll property, real and personal, situated within the commonwealth, and all personal property of inhabitants of the commonwealth wherever situated, unless expressly exempt, shall be subject to taxation . . . ." Section 2 provides that the property of a nonresident situated in Massachusetts may be taxed here and, in this respect, has the same requirement as G. L. c. 59, § 18, Second, which we discuss next. We need not decide whether § 2 alone would warrant local taxation by Boston of the aircraft, assuming the aricraft were situated here. See *Warner Amex Cable Communications Inc.* v. *Assessors of Everett*, 396 Mass. 239, 240 (1985).

be situated there for local tax purposes. *Ingram* v. *Cowles*, 150 Mass. 155, 157 (1889) (portable sawmill of a nonresident consecutively in Leverett two months before and after tax lien date, not taxable in Leverett). To be situated in a municipality the property must have "some degree of permanence of location" and "temporary lodgment or migratory presence" is not enough. *Carlos Ruggles Lumber Co.* v. *Commonwealth*, 261 Mass. 445, 448 (1927). These principles were most fully expounded in *Assessors of Sheffield* v. *J.F. White Contracting Co.*, 333 Mass. 306, 308-309 (1955), where the court upheld the board's finding that machinery in Sheffield for temporary use but for an indefinite time (up to nine months) had not been situated in Sheffield for local tax purposes.

In our case, the aircraft did not have a sufficient degree of permanence of location to be situated in Boston within the meaning of G. L. c. 59, § 18, Second, and thus to be subject to local taxation. The aircraft's affiliation with Boston was far less permanent and identifiable than the machinery in the *Sheffield* case. The airlines' aircraft collectively were in Boston regularly but briefly from time to time, but no specific airplane was, or could have been found to be, situated in Boston. The brief but regular presence in Boston over a period of time of most but not necessarily all of an airline's aircraft used in interstate commerce lacks sufficient permanence to warrant a finding that the aircraft or any one of them was situated in Boston for local tax purposes. The assessors' view that the aircraft had an average presence, or situs, here does not warrant local taxation of a portion of the mean depreciated cost of all an airline's aircraft under current tax statutes.

We agree with the board's closing argument comment that the subject of the taxation of aircraft of the type involved in this case is a proper one for legislative consideration.

*Decision of the Appellate*
*Tax Board affirmed.*