JAYNE K. BENMOSCHE *vs.* BOARD OF REGISTRATION IN
MEDICINE.

Suffolk. December 2, 1991. - March 2, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Doctor*, License to practice medicine. *Administrative Law*, Substantial evidence, Rehearing. *Evidence*, Administrative proceeding. *Practice, Civil*, Stipulation.

In a proceeding before the Board of Registration in Medicine, the parties' binding stipulations as to certain material facts and as to what two potential witnesses would testify if called provided substantial evidence to support the board's decision revoking an individual's registration to practice medicine on the ground that the registration was fraudulently obtained; it was of no consequence that the parties did not stipulate to the truth of the potential witnesses' testimony. [86-88]

In an action for judicial review of a decision by the Board of Registration in Medicine, there was no merit to the plaintiff's request that the matter be remanded to the board for consideration of additional evidence. [88]

CIVIL ACTION commenced in the Superior Court Department on October 7, 1988.

On transfer to the Supreme Judicial Court for the county of Suffolk, the case was heard by *Nolan*, J., and was reported by him.

*Daniel M. Kelly* for the plaintiff.

*Judith Fabricant*, Assistant Attorney General, for the defendant.

ABRAMS, J. A single justice of this court reserved and reported the request of the plaintiff, Jayne K. Benmosche, to set aside a decision of the Board of Registration in Medicine (board) revoking her registration to practice medicine and fining her $10,000. In the alternative, Benmosche asks that we remand the case to the board for the presentation of addi-

tional evidence. We conclude that the Board's decision was supported by substantial evidence showing that Benmosche misrepresented her qualifications and lacked a medical degree. Furthermore, Benmosche has not made the necessary showing to justify remand. See G. L. c. 30A, § 14 (6) (1990 ed.). We affirm.

*Prior judicial proceedings.* Benmosche initiated this action by seeking review of the board's decision in the Superior Court pursuant to G. L. c. 30A, § 14 (1990 ed.). She then petitioned a single justice of this court to transfer the case pursuant to G. L. c. 211, § 4A (1990 ed.). The single justice granted the petition and the case was transferred to the Supreme Judicial Court for the county of Suffolk.

In November, 1989, Benmosche filed two motions, one seeking to vacate a stipulation that the parties had submitted to the board and the other, to present additional evidence. Both were denied by the single justice. After those rulings, over a year passed with no action by Benmosche to bring the action to judgment. The case was heard on the merits on May 15, 1991. On May 16, 1991 the single justice reserved and reported the case to the full court.

*Facts.* Benmosche applied for limited physician licensure as a hospital intern in Massachusetts in 1979. In support of that application, she swore under oath that she had attended medical school from 1972 to 1976 at the Universidad Central del Este (UCE) in the Dominican Republic, and submitted a document, purportedly signed by the dean of the UCE medical school, verifying that she had attended the school from 1972 through 1976 and received her doctor of medicine degree in 1977. On the basis of that application, she was granted a limited license. She worked as an intern and resident at Baystate Medical Center for three and one-half years. In 1982, she applied for full licensure, again swearing that she attended UCE medical school from 1972 to 1976. She also submitted a certificate from the Educational Commission for Foreign Medical Graduates (ECFMG) in support of her application. She received a full license in 1983,

which she renewed in 1985, once again representing that she had graduated from UCE medical school.

On February 11, 1987, the board temporarily suspended Benmosche and issued an "order to show cause" why she should not be disciplined for obtaining her medical license by fraudulently claiming to have received a doctor of medicine degree from UCE medical school. In support of its order, the board referred to correspondence from the dean of the UCE medical school stating that Benmosche had attended UCE but withdrew without receiving a degree.

A hearing officer conducted a hearing on the suspension one week later. The board submitted as evidence, among other things, a notarized letter received on February 11, from Dr. Ray Casterline, vice president of the ECFMG. In his letter Dr. Casterline stated the following. In April of 1981, as part of a routine credential evaluation, ECFMG had written to the dean of the UCE medical school and re- quested verification of Benmosche's diploma. In response, Dr. Casterline had received a letter from the dean, Dr. Juan Silva, reporting that any diploma submitted by Benmosche was false, because she had withdrawn from the school in 1976 without receiving a degree. After ECFMG wrote to Benmosche informing her that a question "had been raised," Benmosche telephoned ECFMG to report that a mistake had been made. ECFMG directed her to obtain written verifica- tion from Dr. Silva. ECFMG subsequently received a letter, dated February 8, 1983, purportedly from Dr. Silva, stating that an error had been made and that Benmosche's diploma was indeed valid. As a result of that letter, ECFMG issued Benmosche a permanent certificate. In 1987, ECFMG re- ceived a telephone call from UCE indicating that the 1983 letter was a forgery. ECFMG wrote to Dr. Silva requesting clarification. In response, it received a copy of a letter Dr. Silva had sent to the CIGNA Health Plan of Massachusetts, dated January 14, 1987, stating that (1) Benmosche had not received a degree from UCE; (2) she had withdrawn from UCE in 1976, and (3) the 1983 letter purporting to be from Dr. Silva was a forgery. On January 30, 1987, Dr. Casterline

received a call from someone claiming to be an attorney representing UCE. The caller asked ECFMG not to take any further action until "the matter [had] been settled." Dr. Casterline informed the caller that the request would have to be in writing from Dr. Silva. Dr. Casterline received no such written request. He notified the board that, based on the information he had, Benmosche's ECFMG certificate was invalid.

Benmosche testified on her own behalf at the hearing. She called to the hearing officer's attention a document which she identified as the diploma which she had received from UCE, but she declined to offer the document in evidence. The hearing officer therefore refused to consider the document. On cross-examination, Benmosche testified that she did not attend her graduation, could name only two of her classmates, and did not know where those two could be located.

On March 10, 1987, the hearing officer recommended that the Benmosche's summary suspension should remain in effect until such time as there was a full hearing and decision on the merits. The board adopted the hearing officer's recommendation. The hearing on the merits was held on July 31, 1987. The evidence at that hearing consisted of the evidence already received at the previous hearing, a stipulation signed by the parties, and an affidavit of Dr. Silva executed before a United States vice-consul.

In his affidavit Dr. Silva swears that: (1) Benmosche registered at UCE in 1975 but did not graduate and does not hold a degree from UCE; (2) he never certified to the board that Benmosche had received a degree from UCE, and any such certification is therefore a forgery; and (3) Benmosche's diploma and the 1983 letter purported to be from him also are forgeries.

The parties stipulated that Benmosche "does not possess the qualifications required by law to be a registered physician," and "does not possess the ECFMG certificate." They further stipulated that "the Board . . . may, without further notice to her, revoke her certificate of registration." The stipulation recited the substance of the testimony Dr. Silva

would give (as stated in his affidavit) if called to the hearing. It also recited that the registrar and keeper of the records of the UCE medical school would, if called, testify that, according to UCE records, Benmosche registered in 1975 but did not receive any grades and did not graduate. Benmosche did not, however, stipulate to the truthfulness of the testimony.

The board issued its final decision and order on September 7, 1988, revoking Benmosche's registration to practice medicine and fining her $10,000. See Kvitka v. Board of Registration in Medicine, 407 Mass. 140, 142-144 (1990). The board denied two subsequent motions by Benmosche, one for reconsideration and one to reopen the case for further administrative review.

*The board's decision.* We modify or set aside a board decision if, among other things, the decision is "[u]nsupported by substantial evidence." G. L. c. 30A, § 14 (7) (*e*) (1990 ed.). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1990 ed.). See *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 528 (1988); *Lycurgus* v. *Director of the Div. of Employment Sec.*, 391 Mass. 623, 627-628 (1984). In reviewing the board's decision, we are required to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14. See *Keigan* v. *Board of Registration in Medicine*, 399 Mass. 719, 723 (1987); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 525 (1979). The board's conclusion will stand if it "*could* have been made by reference to the logic of experience" (emphasis in original). *Alsabti* v. *Board of Registration in Medicine*, 404 Mass. 547, 549 (1989), quoting *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981).

Benmosche argues that the board's decision was not supported by substantial evidence. The board's case against her, she claims, consisted only of "Dr. Silva's letters (and a letter from Dr. Casterline written because of Dr. Silva's letters)."

These letters, says Benmosche, are uncorroborated hearsay, insufficient to support the board's decision. However, in light of Benmosche's binding stipulation,[1] the board did not need to rely on those letters. Benmosche herself, in addition to stipulating that she did not possess the qualifications required by law to be a registered physician, and did not possess an ECFMG certificate, stipulated to what Dr. Silva and the UCE registrar would have testified if they had been called. That stipulated testimony is legally equivalent to the live testimony of the two witnesses, and satisfies all rights of cross-examination. See *Sac & Fox Indians of the Miss. in Iowa* v. *Sac & Fox Indians of the Miss. in Okla.*, 220 U.S. 481, 488-489 (1910) ("evidence, hearsay or *ex parte* . . . may be admitted by consent . . . and then should be given whatever weight it would have but for technical rules"); *Embers of Salisbury, Inc.*, *supra* at 531 (treating stipulated testimony presented to administrative board as equivalent to live testimony); *Mollahan* v. *McGrath*, 357 Mass. 229, 232 (1970), quoting *Frati* v. *Jannini*, 226 Mass. 430, 431 (1917) ("When a case is heard on an agreement of the parties as to the evidence, 'the agreement merely takes the place of the evidence which otherwise would be introduced in the usual way . . .' "); *Lowell Coop. Bank* v. *Sheridan*, 284 Mass. 594, 598 (1933) ("stipulation of the parties that the treasurer of the plaintiff if present would testify to [certain facts] is in substance an agreement as to the evidence to be considered by the court"). Accord *Southdale Center, Inc.* v. *Lewis*, 260 Minn. 430, 434 (1961) (stipulated testimony "waives the adverse party's right to cross-examine that particular witness"). The fact that Benmosche did not stipulate to the truthfulness of their testimony if of no moment. The board was entitled to credit the stipulation as to Dr. Silva and the registrar's testimony. The board's decision was more than amply supported by the evidence before it. Cf. *Assessors of Boston* v. *Flying*

---

[1] A party is bound by its own stipulation "unless the court vacates it as improvident or not conducive to justice." *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 114 (1973), and cases cited.

*Tiger Line Inc.*, 404 Mass. 359, 361 (1989) ("stipulation of facts provided substantial evidence on which the board could properly decide [the] statutory question").

*Request for remand.* The "new" evidence that Benmosche would have the board consider consists of (1) a letter from a "certified grapho-analyst" (unaccompanied by any information about her credentials), stating that, in her opinion, "there is a greater than 80% probability that" the signatures on six documents, incongruously including letters stating that Benmosche does not possess a UCE medical degree as well as a diploma naming Benmosche as the recipient of a UCE medical degree, are all "the authentic signatures of Dr. Silva";[2] (2) an affidavit of one Juan Cambero, who swears, among other things, that he is an attorney in the Dominican Republic and that he "encounter[ed] obstacles" when he attempted to review Benmosche's files at UCE; and (3) Benmosche's own affidavit in which she swears, among other things, that she has "a valid medical degree and a valid medical diploma from [UCE]."

Under G. L. c. 30A, § 14 (6), a reviewing court may order that "additional evidence be taken before the agency" only upon a showing that it is "material" and that there was "good reason" for the failure to present it in the original agency proceeding. See *Fanion* v. *Director of the Div. of Employment Sec.*, 391 Mass. 848, 850 (1984); *She Enters., Inc.* v. *State Bldg. Code Appeals Bd.*, 20 Mass. App. Ct. 271, 273 (1985). It is evident that none of Benmosche's "new" evidence meets either requirement. Thus, our denial of her remand request merits no further discussion.

The request for a remand to the board for reconsideration is denied. The appeal from the decision of the board of Registration in Medicine is remanded to the county court with directions to enter a judgment affirming the decision of the

---

[2] Notably, the signature, purportedly Dr. Silva's, on the 1983 letter which stated that Benmosche's diploma was valid was never compared to the other documents.

board revoking Benmosche's registration to practice medicine and imposing a fine of $10,000.

*So ordered.*